MILLER *v.* RESLER ET AL.

[No. 21,315. Filed May 25, 1909.]

1. INTOXICATING LIQUORS.—*Remonstrances.*—*Signing by Attorneys in Fact.*—*Presumptions.*—A remonstrance against the granting of a license to retail liquors, the names to which were signed by attorneys in fact, is presumptively valid, although the remonstrance does not show that the attorneys were duly authorized (§8333 Burns 1908, Acts 1907, p. 281). p. 325.

2. INTOXICATING LIQUORS.—*Remonstrances.*—*Executing.*—*Challenging.*—A remonstrance against the granting of a license to retail liquors, properly filed, imports that the attorney in fact who signed the names, if they were so signed, was duly authorized so to sign, and the applicant can challenge such attorney's right to sign only by a verified pleading. p. 325.

3. INTOXICATING LIQUORS.— *Remonstrances.*— *Names.*—*Initials.*—A remonstrance against the granting of a license to retail liquors, signed by the surnames and the initials only of the Christian names, is sufficient. p. 325.

4. INTOXICATING LIQUORS.— *Remonstrances.*— *Amendments.*— *Mistakes in Names.*—Where the attorney in fact in executing a remonstrance against the granting of a license to retail liquors, by mistake, wrote "C. M. Smill" instead of "C. M. Smith," an amendment to correct same, asked during the trial, on appeal to the circuit court, was properly granted, and such amendment when so made, related back to the time of the filing of the remonstrance. p. 326.

5. INTOXICATING LIQUORS.— *Remonstrances.*— *Challenging.*— *Presumptions.*—*Burden of Proof.*—A remonstrance against the granting of a license to retail liquors, properly filed, imports that the remonstrators properly executed same, and that they were properly qualified so to remonstrate; and the execution of the remonstrance and the qualifications of the signers can be challenged only by a verified pleading definitely setting out the particular defects complained of, the burden of proof of such execution and qualifications thereafter being upon the remonstrators. p. 326.

6. INTOXICATING LIQUORS.— *Remonstrances.*— *Withdrawals.*—*Powers of Attorney.*—Where powers of attorney were executed, authorizing an attorney to execute withdrawals from a remonstrance theretofore executed against the granting of a license to retail liquors, by remonstrators, and such powers were filed with the county auditor, they are ineffective where no withdrawals were executed by such attorney. p. 328.

7. INTOXICATING LIQUORS.— *Remonstrances.— Withdrawals.— Powers of Attorney.*—Where remonstrators against the granting of a license to sell liquors desire to prevent the execution of a remonstrance by their attorney in fact, they should execute a revocation of his authority and file same with the auditor, or otherwise prevent his signing the remonstrance. p. 329.

8. INTOXICATING LIQUORS.—*Remonstrances.—Powers of Attorney.—Exercise of.*—Ordinarily, a power of attorney expires when the powers granted have been fully performed. p. 329.

9. INTOXICATING LIQUORS.—*Remonstrances.—Powers of Attorney.—Revocation.*—A révocation of a power of attorney for the execution of a remonstrance against the granting of a license to retail liquors is sufficient if filed on the Thursday preceding the convening of the board of commissioners on Monday, or on Friday, if filed before the remonstrance. p. 329.

10. INTOXICATING LIQUORS.— *Remonstrances.— Withdrawals.—Subsequent Remonstrance.*—A voter who withdraws, on Thursday, from a remonstrance against the granting of a license to retail liquors, has the right to execute another remonstrance on Friday. p. 330.

11. INTOXICATING LIQUORS.—*Remonstrances.—Jurisdiction.*—Where a majority of the legal voters of a township remonstrate against the granting of a license to retail liquors, the court is deprived of jurisdiction to grant such license. p. 331.

12. EVIDENCE.— *Qualifications for Voting.— Cross-Examination.— Liquors.—Remonstrances.*—Where remonstrators failed to go into details as to their qualifications as voters, the applicant for license should bring out the facts on cross-examination. p. 332.

From Noble Circuit Court; *Samuel E. Cook,* Special Judge.

Application by Sampson J. Miller for license to retail intoxicating liquors, against which Reuben Resler and others remonstrate. From a judgment for remonstrators, the applicant appeals. *Affirmed.*

*Frank J. Heller* and *Elmer Leonard,* for appellant.
*Deahl & Deahl* and *F. P. Bothwell,* for appellees.

JORDAN, J.—This proceeding was instituted by appellant before the Board of Commissioners of the County of Noble, at the January session, 1908, to secure a license to retail intoxicating liquors at a place described in Noble township, in

said county. On Friday, November 29, 1907, being three days before the beginning of the December session of the board of commissioners of said county, a general or blanket remonstrance was filed with the county auditor. Upon the face of this document it is disclosed that the names of the remonstrators thereto were signed by O. J. Stangland, Samuel Fair and L. W. Parker, as attorneys in fact. Aside from this, there is nothing in the remonstrance or attached thereto to show that these persons had authority to sign the names of the remonstrators to this document. The remonstrance was in the form prescribed by the statute for a general remonstrance by the amendatory act of 1905 (Acts 1905, p. 7, §8332 Burns 1908). It contained the names of 219 persons purporting to be legal voters of Noble township, Noble county, Indiana. On January 6, 1908, appellant, after filing his application for a license, filed and presented to the board a verified pleading termed an answer, whereby he challenged fourteen of the remonstrators, on the ground that they were not legal voters of said township at the time of the filing of the remonstrance. Subsequently he filed before the board of commissioners an additional verified pleading, wherein he alleged that the names of the same fourteen remonstrators mentioned in the first pleading had not been signed to the remonstrance by any person having authority to do so. These pleadings were filed under an act of the legislature entitled "An act to regulate and define the practice and proof required in remonstrances against the sale of intoxicating liquors," approved March 9, 1907 (Acts 1907, p. 281, §8333 Burns 1908). This statute provides: "That whenever a remonstrance shall be filed against the granting of any liquor license, the filing of such remonstrance, with the names thereto attached shall be *prima facie* evidence that said names were regularly and properly and lawfully attached and signed to said remonstrance, and that the person or persons whose names are attached to said remonstrance are

legal voters of the township or city ward as provided by law, and qualified by law to sign said remonstrance; and no further proof shall be required by the court as to the signing of said remonstrance, or the signing of any power of attorney by which said names were attached to said remonstrance, or the legal qualifications under the law of the persons whose names are thereto attached, unless the right of such person or persons to sign and the legal qualifications of each person whose name is thereto attached, and whose right to so sign is questioned shall be denied by pleading under oath by the applicant for such license.''

It appears that on November 28, 1907, the day preceding the filing of the general remonstrance as hereinbefore mentioned, appellant filed with the county auditor fourteen cards each of which purported to be a power of attorney executed by the person whose name was signed thereto. By these several cards, M. W. Howk and thirteen others, all of whom appeared to be remonstrators on the remonstrance filed on November 29, 1907, authorized and empowered J. E. Luckey and C. E. Knowlton, or either of them, to act for the person signing each of the cards, as follows:

''To sign my name to a withdrawal from a remonstrance against the granting of a liquor license to any person in said Noble township, and to sign my name to a withdrawal from any and all remonstrances that I may have signed against the granting of a liquor license to all applicants for such license in said township, and I hereby authorize my said attorneys in fact, or either of them, to withdraw my name signed to any remonstrance against any particular person or against all persons applying for such license in said township, and I hereby expressly empower my said attorneys, or either of them, to sign my name to such withdrawal or withdrawals and the date upon which my attorneys, or either of them, shall file such withdrawal with the auditor of Noble county shall be the date upon which the same shall be binding upon me.''

It is disclosed that these attorneys in fact never exercised nor attempted to exercise the power of withdrawing the

names of the fourteen persons from any remonstrance, but the only act which they appear to have performed was to cause the several cards in question to be filed with the county auditor on November 28, 1907. No further, action seems to have been taken by them as the attorneys in fact of the persons executing the power of attorney. It appears that six of the fourteen remonstrators, after investing their attorneys in fact with the power to execute withdrawals, became impressed, for some reason, with a "change of heart," and accordingly on Friday, November 29, through the agency of attorneys in fact, procured their names to be signed to the remonstrance filed on that date. There was a hearing before the board, which resulted in the latter's sustaining the remonstrance of November 29, and by reason thereof a license to appellant was denied. From this decision he appealed to the Noble Circuit Court. Therein there was a trial by the court, and a special finding of facts, in which the court stated its conclusions of law adversely to appellant. To each of these conclusions the latter reserved exceptions. Over appellant's motion for a new trial, assigning the statutory grounds and others, the court rendered judgment, denying him a license and awarding costs to appellees. He appeals and assigns, among others, the following alleged errors: (1) Overruling his motion to strike out the remonstrance filed by appellees; (2) overruling his motion to strike therefrom the names of sixty-six persons whose Christian names were signed by initials only; (3) overruling his demurrer to the remonstrance; (4) refusing to allow him to file a third paragraph of answer; (5) sustaining appellees' motion to amend the remonstrance by making certain-mentioned corrections; (7) that the court erred in each of its conclusions of law; (9) that the court erred in overruling the motion for a new trial.

The first and third errors assigned and relied upon for a reversal are directed against the rulings of the lower court,

which upheld the sufficiency of the general remon-
strance. As was previously said, this remonstrance
was in the form prescribed by the statute, and, at
least in this respect, is sufficient. But counsel for appel-
lant advance the argument that the motion to strike out the
remonstrance should have been sustained, because the docu-
ment does not disclose that the attorneys in fact, as therein
mentioned, were duly authorized or empowered to sign the
names thereto of the various remonstrators. There is no
merit in this contention, for it will be noted that §8333,
*supra,* declares that ''the filing of such remonstrance,
with the names thereto attached shall be *prima facie*
evidence that said names were regularly and properly
and lawfully attached and signed to said remonstrance,
*   *   *   and no further proof shall be required by the court
as to   *   *   *   the signing of any power of attorney by
which said names were attached to said remonstrance,
*   *   *   unless the right of such person or persons to sign
*   *   *   shall be denied by pleading under oath by the ap-
plicant for such license.'' By the force of this statute
every name signed to the remonstrance must, in the first
instance, be regarded as *prima facie* correct and valid until
challenged by the applicant as prescribed by the statute.

It appears that appellant, in the lower court, filed a mo-
tion to strike out and reject from the general remonstrance
the names of sixty-six of the remonstrators, on the
ground that their Christian names had been signed
thereto by initials. This motion, over the objections
of appellant, the court denied, and upon this ruling appel-
lant predicates his second assignment of error. That the
court committed no error in denying this motion is fully
sustained by the decision in *Collins* v. *Marvil* (1896), 145
Ind. 531, wherein this court held that a person subscribing
a remonstrance against a liquor license may employ his ini-
tials to indicate his Christian name, provided his surname is

written in full. See, also, *Good* v. *Burk* (1906), 167 Ind. 462, and authorities cited; *Stembel* v. *Bell* (1903), 161 Ind. 323; *Old Wayne, etc., Assn.* v. *McDonough* (1905), 164 Ind. 321, 323.

During the trial it was shown that the name of C. M. Smith, one of the remonstrators, had been signed by mistake and inadvertence as "C. M. Smill." It appeared that

4. Smith's attorney in fact, in signing "C. M. Smill," intended to sign "C. M. Smith," but by mistake and inadvertence in copying the name of C. M. Smith from the power of attorney, and in signing it to the remonstrance, signed it as C. M. Smill. The attorney in fact had been authorized by C. M. Smith to sign his name to the remonstrance, but it does not appear that there was any such person as C. M. Smill. Appellees moved for permission to amend their remonstrance in this respect by changing Smill to Smith. This motion the court sustained, and granted permission so to amend. Upon this ruling of the court appellant bases his fifth assignment of error. The error made in writing Smill for Smith, under the facts was so palpable that the court properly allowed the correction to be made. By the correction no new party, as the appellant insists, was introduced into the case. As "Smill," when signed to the remonstrance by the attorney in fact, was intended by the latter for "Smith," the amendment as made merely corrected the error, and made the remonstrance disclose the true name. The amendment as made related back to the time of the filing of the remonstrance.

Before the passage of the act of 1907, *supra,* this court, in *Jones* v. *Alexander* (1906), 167 Ind. 395, held that the burden in general rested upon the remonstrators to

5. show that at the time the remonstrance was filed it came within the requirements of the statute. This rule, as declared in that decision, has been abrogated by the statute in question, and now under its provisions the remonstrance, when once filed, of itself becomes *prima facie*

or presumptive evidence that the names of the persons at-tached thereto were regularly, properly and lawfully signed, and that such persons, at the time the remonstrance was filed, were legal voters of the township, in case the remonstrance is filed against the traffic of intoxicating liquors in a town-ship, or that they were legal voters of a city ward, in case such remonstrance is directed against the traffic in the ward of a city, and that each and all of the signers were legally qualified to sign· the remonstrance. By the force of the statute in question the remonstrators are relieved of the general burden of proving that the names of the remon-strators were "regularly and properly and lawfully at-tached and signed to said remonstrance," or that they were legal voters of the township or ward, and were qualified to sign the remonstrance, unless, as the statute declares, the right of such persons to sign the remonstrance, and the legal qualifications of such persons are questioned by a pleading "under oath by the applicant for such license." This veri-fied pleading is required to be definite in respect to each of the remonstrators challenged, and fully to set forth the grounds of the challenge, in order that the remonstrators may thereby be apprised of what they are expected to meet or rebut; or, in other words, in the absence of a verified pleading on the part of an applicant, the board of commis-sioners, or court trying the cause on appeal, is required to presume, in favor of the remonstrance, that the persons sign-ing said remonstrance were legal voters of the district in question, that they were duly qualified to sign said remon-strance, and that their names attached thereto were signed either by them in person, or by some one duly empowered to sign their names. But on the filing of a verified pleading, as provided by the statute, whereby the legal qualifications of certain mentioned remonstrators are challenged, or the au-thority of the persons purporting to act for them in the· premises is challenged, then the onus to rebut such matters questioned by the pleading is cast upon the remonstrators,

or, in other words, the legal qualifications of the remonstrators so challenged must be established by the remonstrators by a preponderance of the evidence, and likewise the power of attorneys in fact, if challenged, must be established by the remonstrators. One purpose of the act was to relieve the remonstrators of the burden which rested upon them before the passage of the act of 1907, *supra,* as declared in *Jones* v. *Alexander, supra,* of proving in the first instance the legal qualifications of all the remonstrators and the authority of any attorney in fact to sign the names of the remonstrators.

The trial court held that the powers of attorney of the fourteen remonstrators, which were filed with the county auditor on Thursday preceding the filing of the remonstrance on Friday, could not be considered as having the effect of withdrawing the names of these remonstrators, because such power of withdrawing was never exercised by Luckey and Knowlton, or either of them. As previously shown, the facts disclose that these attorneys in fact were apparently content to do nothing more than file with the county auditor their authority to execute and file written withdrawals. But such authority was by them never exercised. The power of attorney given to Luckey and Knowlton provided that they, or either of them, was appointed to sign the name of the voter to a withdrawal from the remonstrance against the granting of a liquor license to any person in said township and to sign his name to a withdrawal from any and all remonstrances that he may have signed against the granting of a liquor license to all applicants for license in such township, etc. It was further provided therein that the date upon which the attorneys in fact "shall file such withdrawal with the auditor of Noble county shall be the date upon which the same shall be binding upon me." As previously stated, the remonstrance in this case was not filed until late in the afternoon of Friday, November

29, 1907, consequently on Thursday preceding, when the powers of attorney authorizing the withdrawals from remonstrances were filed with the auditor, there was no remonstrance on file containing the names of any of these fourteen persons. Neither does it appear that the remonstrance in the case, with the names signed thereto, had actually been prepared, and was being held by those having it in charge, with the intention of filing it with the auditor on Friday, November 29. Therefore if these fourteen persons, or any of them, did not desire to have the remonstrance in question, with their names attached thereto as remonstrators, filed on Friday, the proper method to pursue would have been to revoke their general power of attorney under which the authority to sign their names to a remonstrance had been conferred, and thus prevent the attaching of their names to the remonstrance; or, in case their names were signed, to prevent the filing of the document with their names attached. The power of attorney which they appear to have executed, authorizing their names to be signed to any and all remonstrances, was not coupled with any interest, hence it might have been revoked by them, or any of them, at any time before the power thereunder conferred upon the attorneys in fact had been exercised by them. Generally speaking, the filing of a remonstrance with the auditor in such a case as this is the consummation of the power, and when this act is once performed the power of the attorney in fact has been fully exercised. The right of these fourteen persons to revoke the power previously conferred upon their attorneys in fact could have been successfully exercised by filing a written revocation with the county auditor at any time before the filing of the remonstrance. The filing with the auditor of such a revocation might have been as late as Friday, November 29, provided it was filed before the filing of the remonstrance on that day; but after the

filing of the latter there could be no revocation of the power of the attorneys in fact, which, in any manner, would affect the particular remonstrance involved, for the evident reason that in respect to it the power of the attorneys in fact had been fully exercised. Had these persons filed their written revocation of the power of their attorneys in fact, the filing of the remonstrance thereafter, with their names thereon, would have been unauthorized, and they could not have been legally counted as remonstrators in the case. The mere filing, however, of the cards authorizing their withdrawals cannot be regarded as operating as a revocation of the power of their attorneys in fact, who appear to have signed their names to the remonstrance filed on Friday, November 29. The holding of the lower court on the question presented upon the filing with the auditor of the cards in controversy, authorizing the execution of the withdrawals, was, under the facts, clearly right.

Appellant's counsel contend that the six persons who signed the remonstrance on Friday, November 29, after having on the previous day authorized their names to be 10. withdrawn from any and all remonstrances, could not thereafter exercise the right of remonstrating in this case. This contention cannot be sustained. They clearly had the right to sign the remonstrance in question, as they did, notwithstanding the fact that they had previously executed powers of attorney whereby they authorized the withdrawal of their names "from any and all remonstrances." A voter cannot, by any act or agreement, legally obligate himself not to exercise the privilege of remonstrating against the granting of a liquor license, no more than he can legally obligate himself not to cast his vote at an election. But it may be said, however, that these six persons, by their acts as shown, placed themselves in an inconsistent position, by one day appointing attorneys in fact to secure the withdrawal of their names from any and all remonstrances and on the

next day procuring their names to be signed to the remonstrance which was filed in this case. Their extraordinary action in the premises may be said to afford room for asserting that possibly they were unduly influenced or subjected to double dealing. In *Massey* v. *Dunlap* (1896), 146 Ind. 350, this court, speaking in reference to procuring voters to sign a remonstrance, said: ''All 'maneuvering,' 'jockeying,' or 'log-rolling,' in order to secure voters to sign a remonstrance, or to prevent them, if they so desire, from signing the same, ought to be condemned. The evident intention or policy of the law is that the voters of the particular district may be permitted, without restraint or undue influence, to register their will against a liquor license being granted to an applicant therefor to sell his liquors in their midst.''

It was agreed between the parties that the highest number of votes cast in Noble township for any candidate at the previous general election was 404, 203 of which constituted the required majority. The trial court, under the evidence, found that of the 219 remonstrators, whose names were signed to the remonstrance when it was filed, 216 of these were legal and qualified voters of said township, the court particularly specifying their ages and the period of time they had resided in the State, township and precinct, and also that the persons who had signed the names of these 216 remonstrators were fully authorized and empowered to do so by virtue of a power of attorney executed by these remonstrators. The evidence fully sustains the finding and judgment of the court. It follows that, by reason of the signing of the remonstrance by a majority of the legal voters of the township, the court was thereby deprived of all power and authority to grant appellant a license, and necessarily was compelled to dismiss the application.

Appellant complains because some of the remonstrators, in testifying in respect to their qualifications, did not go

more fully into details to show that they were quali-
fied as voters at the time they signed the remon-
strance.   If he had any reason to believe that these
remonstrators were not of the age of twenty-one years and
had not resided in the State six months, in the township sixty
days, and in the precinct thirty days, immediately preceding
the time when they signed the remonstrance, he had a right
to expose their disqualification on cross-examination.   This
he failed to do.

Other rulings of the trial court are discussed by appel-
lant's counsel, but if these could be said to be impressed
with any error, they nevertheless would not exert any con-
trolling influence over the judgment of the lower court.
Finding no available error, the judgment is affirmed.