## BEHLER *v.* ACKLEY ET AL.

[No. 21,334.    Filed November 23, 1909.]

1. INTOXICATING LIQUORS.—*Remonstrances.—Subsequent Jurisdiction.*—Where a valid remonstrance against the granting of license to retail intoxicating liquors was filed in January, the board of commissioners had no jurisdiction to grant a license in February, the only effect of the filing of another remonstrance, in February, being to extend the time of exclusion another month.  p. 177.

2. INTOXICATING LIQUORS.— *Remonstrances.— Withdrawals.—* Remonstrators against licenses to retail liquors, who filed their remonstrance in January, cannot withdraw therefrom in February, so as to affect such January remonstrance.  p. 177.

3. INTOXICATING LIQUORS. — *Remonstrances. — Withdrawals. —* Where persons have never executed a remonstrance against the granting of a license to retail liquors, an instrument of withdrawal executed by them is a nullity.  p. 177.

4. INTOXICATING LIQUORS.—*Remonstrances.—Withdrawals.—Subsequent Renewals.*—A person who withdraws from a remonstrance against the granting of a license to retail liquors, on Thursday, may reëxecute such remonstrance on Friday.  p. 177.

5. INTOXICATING LIQUORS.— *Remonstrances.— Withdrawals.*—Persons signing a remonstrance against the granting of a license to retail liquors may withdraw therefrom at any time on, or prior to, the Thursday preceding the regular session of the board of commissioners, or at any time on Friday before the filing of such remonstrance, but cannot withdraw on Friday after the remonstrance is filed.  p. 177.

6. INTOXICATING LIQUORS.—*Remonstrances.—Principal and Agent.* —The ordinary principles of the law governing principal and agent, govern as to executing and withdrawing from remonstrances against the granting of licenses to retail liquors.  p. 178.

7. TRIAL.—*Special Findings.—Ultimate Facts.—Legal Voters.—Intoxicating Liquors.—Remonstrances.*—Special findings, in an application for license to retail liquors, that eight remonstrators were not, and six were, "legal voters of the ward" are findings of ultimate facts, and are sufficient.  p. 178.

8. INTOXICATING LIQUORS.—*Applications for License.*—*Former Remonstrances.*—*Duties of Boards.*—Where an application for a license to retail liquors is filed, it is the duty of the board to ascertain whether a sufficient remonstrance has theretofore been filed, and if such has been filed, to deny such application, the board having no jurisdiction to grant such application. p. 180.

9. APPEAL.—*Harmless Error.*— *Exclusion of Evidence.*— *Remonstrator, Not a Voter.*—*Intoxicating Liquors.*—Excluding evidence showing that one remonstrator was not a legal voter, is harmless, where there was a majority without such remonstrator. p. 181.

From Dekalb Circuit Court; *John W. Hanan,* Special Judge.

Application for liquor license by Peter F. Behler, against which Chauncey T. Ackley and others remonstrate. From a judgment for remonstrators, applicant appeals. *Affirmed.*

*W. W. Sharpless* and *Leonard & Townsend,* for appellant.
*J. H. Rose* and *Mountz & Brinkerhoff,* for appellees.

HADLEY, C. J.—In March, 1908, appellant was, by the board of commissioners, and later by the circuit court on appeal, refused a license to sell intoxicating liquors at retail in the first ward of the city of Garrett.

It appears from the special finding of facts that at 11 o'clock p. m., on Thursday, January 30, 1908, an instrument in writing, signed by forty-one persons, was filed with the county auditor, giving notice to the board of commissioners that each of said signers desired to withdraw his name from any and all remonstrances that might be thereafter filed against the granting of a license to sell liquors in said first ward of Garrett. The name of each of said forty-one persons had been signed to the withdrawal paper by duly appointed attorneys, whose power was full and explicit to execute a withdrawal from any remonstrance the principal had signed, and to be effective on the day of actual signing. At the time said withdrawal paper was filed, and at the time of the execution to the attorneys of the power to sign the withdrawals, thirty-four of the persons whose names were at-

tached to the withdrawal paper had not signed any remonstrance, nor executed any power of attorney to another authorizing their names to be placed upon any remonstrance. In addition to said thirty-four persons, McDonald and Sweeney, two others of said forty-one persons, on January 30, after they had given powers to an attorney to execute withdrawals on their behalf, executed to another attorney powers to sign their names to any and all remonstrances against the granting of a license to sell in said ward. On the next day, to wit, January 31, 1908, there was filed in the auditor's office a blanket remonstrance against the granting of a license to any and all persons to sell in said ward, which remonstrance was signed by 143 persons, purporting to be legal voters of the ward, including the thirty-four pretended withdrawers, and McDonald and Sweeney. At the time of filing the remonstrance, January 31, there were 253 legal voters in said ward, as shown by the last preceding election, of which number 127 constituted a majority. If the forty-one persons who filed withdrawals on Thursday, successfully withdrew from the remonstrance that was filed on Friday, the withdrawals reduced the number of signers of the remonstrance to 102, and when the thirty-six withdrawers came back and reëxecuted the remonstrance on Friday, that increased the number of signers to 138. In February, 1908, appellant gave notice that at the following March term of the board of commissioners he would apply for a license, and on March 3 he did file and present his application, and also a verified plea that fourteen specified persons, whose names appeared on the January remonstrance, were not legal voters of the ward when said remonstrance was filed. Upon the hearing on said plea the court found that eight of the fourteen were not legal voters, and that one other person's name appeared twice on the remonstrance, thus reducing the number who had a right to sign the remonstrance to 129. Appellant, with his application, filed his further verified plea, chal-

lenging the right of all persons to sign the remonstrance on January 31, who had on the previous day executed withdrawals from all remonstrances.

After appellant had given notice in February that he would apply for a license at the March term, the remonstrance of January 31 was brought forward and renewed in identical language and names—the latter being subscribed by attorneys with renewed powers—except that it had attached to it the names of thirteen additional persons, making a total of 156, and the same was filed with the auditor on Friday, February 28, 1908.

To the second remonstrance appellant filed a sworn plea that seventeen of the signers were not legal voters of the ward, and also his plea questioning the right of any one to sign the remonstrance who had signed and filed with the auditor a withdrawal on January 30. On the day before the second remonstrance was filed with the auditor, a paper was filed in said office which purported to be a notice of withdrawal, from any and all remonstrances, by a large number of persons whose names appeared on the remonstrance of January 31, and also appeared on the pretended withdrawal paper filed January 30.

It thus appears that, notwithstanding the hysterical action of divers persons, the trial resulted in showing that 129 qualified persons signed the remonstrance of January 31, two more than a majority of the legal voters of the ward; and conceding, without considering, all that appellant claims in his answer, to wit, that seventeen of the signers of the remonstrance of February 28 were not legal voters of the ward, there remain 139 names on the remonstrance; and conceding further that four of the 139 had executed valid withdrawals and one other person's name was duplicated, we still have left to the remonstrance a clear majority.

These findings show that the jurisdiction of the board of commissioners was ousted by the remonstrance of January

31 for a period of two years, and the remonstrance of

1. February 28 was wholly a matter of supererogation, except that if sufficient it would operate to extend the period of exclusion from that date. Whether it was, therefore, sufficient or insufficient as a remonstrance is worthy of no consideration.

The sufficient remonstrance of January 31 not only determined for two years the power of the commissioners to grant a license within the district, but it also fixed for a

2. like period the status of all signers as that of remonstrators, and the effort made by some of those who signed the January remonstrance to become withdrawers by filing such declaration with the auditor on February 27 was wholly nugatory. *Cain v. Allen* (1907), 168 Ind. 8; *Regadanz v. Haines* (1907), 168 Ind. 140.

Further, those who filed with the auditor, on the evening of January 30, withdrawals from all remonstrances, when they had in fact, neither in person nor by attorney,

3. signed any remonstrance, did a foolish and frivolous thing. It is inconceivable how they could withdraw from a paper that they had not signed.

Those who had signed a paper intended as a remonstrance could withdraw therefrom on Thursday, January 30, and on Friday, January 31, could reconsider, and by per-

4. son or attorney reëxecute the remonstrance at any time before the latter was filed in the auditor's office as such. *State v. Gerhardt* (1896), 145 Ind. 439, 473, 33 L. R. A. 313; *Lee v. Shull* (1909), 172 Ind. 309.

Those who had in person or by attorney signed a document intended to be, but not, filed as a remonstrance, could withdraw therefrom in person or by attorney on Friday,

5. February 28, at any time before the document reached the files of the auditor's office. *Ludwig v. Cory* (1902), 158 Ind. 582; *White v. Prifogle* (1896), 146 Ind. 64.

The distinction is this: As to a paper that has been lodged

in the auditor's office, as a remonstrance, on Thursday next before a regular session of the board of commissioners, after the beginning of the following Friday there can be no further withdrawal of names attached. With the commencement of Friday the legal status of the document becomes fixed, and all signers, not having exercised their right of withdrawal before that time, are concluded and bound by its provisions for two years, if the same is found by the commissioners to be effective as a remonstrance. *Cain* v. *Allen, supra; Lee* v. *Shull, supra.*

But as to a paper that is designed to be filed and presented as a remonstrance, but is still in the possession and control of agents, and has never reached the auditor's office as a remonstrance, persons may, during the Friday next before a regular session of the board of commissioners, before it is filed, sign it; or, having previously signed, may withdraw their names therefrom; or may revoke a power of attorney to do either, at any time before the power is exercised. The filing of the instrument, however, on Friday, precludes any further changes by either withdrawals or additional signatures. *Flynn* v. *Taylor* (1896), 145 Ind. 533; *State* v. *Gerhardt, supra; Lee* v. *Shull, supra; Miller* v. *Resler* (1909), 172 Ind. 320.

There is nothing mysterious or novel in the matter of executing, and withdrawing names from, a remonstrance against the liquor traffic. All questions pertaining thereto are

6.  governed by the ordinary and established pertinent rules which pertain to the doctrine of principal and agent. *McClanahan* v. *Breeding* (1909), 172 Ind. 457; *White* v. *Furgeson* (1902), 29 Ind. App. 144.

Appellant argues that the January remonstrance was insufficient, because the court reached the number of 129 remonstrators by means of an erroneous finding, the

7.  contention being that finding eight, to the effect that of the fourteen persons whose names appeared upon the remonstrance, and were challenged by appellant's

answer as being nonvoters of the ward, eight "were not legal voters of the ward" and six "were legal voters of the ward," was void as stating a conclusion and not an ultimate fact. The insistence is, that since the burden rested upon the remonstrators to establish the sufficiency of the remonstrance, the absence from the finding of any fact necessary to establish the remonstrance must operate against the remonstrators, and that striking out number eight from the special findings, as should be done, would reduce the number of signers to the remonstrance from 129 to 123, which would be less than a majority of the legal voters of the ward. In theory, appellant is right, but his premise is wrong. It has many times been held by this court that the office of a special finding is to state the ultimate facts, and not the probative or evidentiary facts. Concerning this point we said, in the case of *Taylor* v. *Canaday* (1901), 155 Ind. 671, 675: "The office of a special finding is not to state the evidentiary facts, that is, such facts as prove the existence of the ultimate or inferential facts. Such evidentiary and probative facts are to be considered by the court in determining the existence of the substantive ultimate facts, but their statement in a special finding is improper."

The ultimate substantive fact to be determined was whether the persons challenged were legal voters of the ward. The facts of date of birth, when they severally established domiciles in the State, county, township and ward, were only important as each tended to prove, or was evidence of, the substantive or ultimate fact to be determined. Each standing alone fell far short of the mark, but each supplied some evidence for or against the main fact, and, if found consistent with the substantive fact, the court could properly infer from the body of such subsidiary and evidentiary facts the existence of the main or ultimate fact. Such is a conclusion of fact and not of law. See illustrations in *Taylor* v. *Canaday, supra.*

Appellant relies upon *Quinn* v. *State* (1871), 35 Ind. 485,

in which case it was charged in the indictment that Quinn, "then and there, not having the legal qualifications of a voter at such election, unlawfully, knowingly and wilfully voted at said election, contrary," etc. The indictment was held bad because it did not specify the qualification lacking in the defendant to make him a legal voter. We cannot accept this case as a controlling precedent. The question in that case was not only one of pleading, but also arose in a prosecution by the State, in which the first essential of a valid indictment is that it apprise the defendant of the precise nature of the offense with which he is charged.

To constitute a voter, various attributes must coëxist, the absence of any one of which will disqualify him; and in a prosecution for illegal voting there is much reason for the holding that the defendant is entitled to be informed of the particular qualification he is charged with lacking, and thus enable him to prepare his defense.

We think the special finding complained of was proper, and that the conclusions of law thereon were sufficient to sustain the judgment.

Upon appellant's presentation to the commissioners of his application for a license, in March, 1908, the very introduction of the subject, by offering proof of notice, called into the case, by operation of law, the preceding January remonstrance then on file in the auditor's office. It then became the first duty of the commissioners to determine the sufficiency of said remonstrance, and if the board found that the same was filed in the auditor's office three days before a regular meeting of the board, and that at the time of filing it was executed by a majority of the legal voters of the ward, that was the end of the inquiry. Such a result would be equivalent to finding that the board had no power and no jurisdiction to grant a license to any one to sell liquor in the ward for two years, without reference to formality or fitness of the applicant, and the board

should thereupon dismiss the proceeding. *Cain* v. *Allen*, *supra; Hoop* v. *Affleck* (1904), 162 Ind. 564.

One Metcalf was a remonstrator, but not a witness at the trial. His qualification as a voter was called in question by appellant's verified plea, and, during the trial, appellant, while examining his witness Behler, requested the witness to state fully what Metcalf had said to him, in a previous conversation, about his place of residence, and what was his intention as to residence when he left Garrett and when he returned to Garrett. The exclusion of testimony solicited is made a ground of complaint. Assuming that the answer of the witness would have disclosed that Metcalf was not a voter, it would not have affected the result of the trial, for, excluding Metcalf, there would have remained on the remonstrance a majority of the legal voters of the ward. If erroneous, therefore, the ruling was harmless, and we pass it without consideration.

We have found no available error. Judgment affirmed.