## HORN *v.* LUPTON ET AL.

[No. 21,984. Filed May 20, 1914. Rehearing denied
November 11, 1914.]

1. JURY.—*Suit in Equity.*—*Complaint.*—A complaint for an accounting and settlement of a partnership banking business, alleging that there has never been any adjustment or settlement of the business, that there were large net earnings, and that defendants had permitted another bank to use the partnership funds without recompense, states a cause of exclusive equitable cognizance, hence the plaintiff was not entitled to a trial of the cause by jury. p. 359.

2. TRIAL.—*Special Findings.*—*Purpose.*—The purpose of a special finding of facts, with conclusions of law thereon, is to make the case easily reviewable upon the exact grounds on which the judgment rests. p. 361.

3. TRIAL.—*Special Findings.*—*Evidentiary Facts.*—Under §577 Burns 1914, §551 R. S. 1881, a special finding is a statement of the ultimate facts from which the law determines the rights of the parties to the action, and should not state the evidentiary facts; hence, in passing on a special finding, evidentiary facts must be regarded as surplusage. p. 361.

4. APPEAL.—*Findings.*—*Review.*—With the exception that where the evidence is documentary, which exception results from the court's function to construe documents, the court on appeal has no power to infer the existence of an ultimate or inferential fact from evidentiary facts found, even though all the evidence is embraced in the findings. p. 361.

5. APPEAL.—*Review.*—*Findings.*—*Sufficiency.*—In an action for an accounting and settlement of the affairs of a banking corporation, a finding that a certificate of deposit, which defendants claimed represented the amount of plaintiff's interest in the business, "was handed to the plaintiff by the defendant * * * whereupon the plaintiff told the defendant * * * to keep said certificate, and that when she wanted said certificate she would call for it", was the finding of a mere evidentiary fact and not equivalent to a finding that plaintiff accepted the certificate, so that the court's conclusion that plaintiff was not entitled to recover, on the theory that she had accepted such certificate in settlement of her share in the partnership property, was erroneous. p. 362.

6. APPEAL.—*Review.*—*Evidence.*—*Findings.*—Plaintiff in an action for an accounting and settlement of the business of a banking partnership was entitled to a finding that all the partnership

debts were paid, where the evidence without conflict showed such fact. p. 362.

7. PARTNERSHIP. — Accounting. — Liability. — Where the partners managing a banking partnership deposited a large part of its funds with another bank in which they were interested, at a much lower rate of interest than that at which the funds of the partnership bank were usually loaned, they were liable for loss sustained by another partner by reason of such difference in the interest rate, under the rule that a managing partner must act in perfect faith in transacting the partnership business, and is not permitted to retain any profits derived from the use of its funds in his private business. p. 363.

8. BANKS AND BANKING.—Private Banks.—Statutory Provisions.— Existing banking partnerships were not dissolved by the act of March 4, 1905, regulating the business of banking by individuals and partnerships (Acts 1905 p. 182), but such partnerships were required to comply with its provisions in order to continue in business. p. 363.

From Wells Circuit Court; Charles E. Sturgis, Judge.

Action by Lenora Horn against Ambrose G. Lupton and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) Reversed.

W. A. Thompson and R. W. Sprague, for appellant.

Jay Hindman, Eichhorn & Vaughn, Smith & Moran and John M. Smith, for appellees.

MORRIS, C. J.—This was an action by appellant against appellees Lupton and Gemmill, and Lupton as executor of the will of Eliza Lupton, deceased. The complaint is in two paragraphs, the first of which alleges that in February, 1901, appellant and appellees Lupton and Gemmill, and Eliza Lupton executed a written contract for the formation of a partnership to engage in the banking business at Pennville. A copy of the agreement, set out in the first paragraph of complaint, provides for a capital of $20,000, each partner to contribute a fourth thereof, and for the business to continue for ten years, under the management of appellee Ambrose G. Lupton, as president and appellee Gemmill as vice president, until otherwise agreed; said officers are author-

ized to appoint a cashier. The contract further provides that the death of a partner shall not terminate the partnership, if the survivors desire to continue the business; that in such event the business may be continued, if the survivors shall pay the personal representative of the decedent the amount invested by the decedent in the business, together with his share in the undivided profits.

It is averred that on the execution of the contract, appellant contributed $5,000, for the use of the partnership, and thereupon the business contemplated by the contract was established, and that it continued, under the sole management of appellees Ambrose G. Lupton and Gemmill, until June 30, 1905, when they, without appellant's knowledge or consent, wrongfully terminated the partnership, and turned over to a new partnership, managed by them, all the assets of the old one including good will, money, choses in action, etc., and placed the new partnership in possession of the room formerly occupied by the old one; that the new partnership was formed by said appellees, Eliza Lupton and others. It is also alleged that the old partnership conducted a profitable business, and, at the time of its dissolution, had on hand net earnings of the value of $20,000; that during all the time of its existence, appellees Lupton and Gemmill kept $10,000 of its funds in a bank in Hartford City, in which they were interested, and of which said Lupton was an officer; that the Hartford City bank loaned said funds, but never accounted to the Pennville bank for the use thereof, and the latter never received anything for the use of said funds.

It is averred that appellees, Ambrose G. Lupton and Gemmill, are the managers of said new partnership, and have in their possession all of the assets of the old firm, together with all the books and papers thereof, and refuse appellant an inspection of such books and papers, for the purpose of ascertaining the amount of property belonging to the old firm. The paragraph also alleges that the old partnership

matters have never been adjusted or settled; that appellant has demanded of said appellees, and been refused, an accounting for her capital invested in the partnership, and the earnings thereof; that she has demanded of them payment of the amount invested by her in the partnership, together with one-fourth of the partnership's net earnings, which demand has been refused; that all the indebtedness of the partnership has been paid; that after the dissolution of the firm said Eliza Lupton died testate, and said Ambrose G. Lupton is the qualified executor of her will; that the business of said old firm was very profitable, and had it not been wrongfully dissolved, it would, at the termination of its ten years' existence, as provided for by the contract, have earned $50,000, on its capital invested, instead of the $20,000 actually earned, before the wrongful dissolution. It is alleged that appellant is a housekeeper, has no knowledge of the banking business, and never inspected the books of the firm. By reason of the facts averred, appellant avers she has been damaged in the sum of $20,000 for which she demands payment.

The second paragraph of complaint alleges that appellees Lupton and Gemmill converted the assets of the old firm to their own use, instead of turning them over to another partnership, as alleged in the first paragraph. In other respects, the allegations of the second paragraph are substantially the same as those of the first.

There was no demurrer to either paragraph of complaint. Appellees answered by general denial. Appellant's motion for a trial by jury was denied. The court made a special finding of facts, from which it concluded that appellant was not entitled to recover. Appellant's motions for a *venire de novo* and a new trial, were overruled, and judgment was rendered for appellees.

Appellant contends there was error in denying a trial by jury. If the cause was one of equitable jurisdiction, there was no error. It will be noted that the first paragraph of

complaint alleges that there has never been any ad-
1.   justment or settlement of the partnership business;
      that there were large net earnings, and that appellees
Lupton and Gemmill had permitted another bank to use this
partnership's funds in its own business without recompense.
Law courts are not possessed of the special machinery re-
quired for dealing with complicated accounts and interests.
*Powell* v. *Bennett* (1892), 4 Ind. App. 112, 29 N. E. 926;
*McBride* v. *Stradley* (1885), 103 Ind. 465, 2 N. E. 358; 30
Cyc. 715, 716; 1 Story, Eq. Jurisp. (12th ed.) §683. In
refusing a jury trial there was no error, because, on the
facts stated, the cause was one of exclusive equitable cogni-
zance.

The court found the facts specially, and concluded there-
from that appellant was not entitled to recover. Appellant
excepted to the conclusion. By the special findings it is
shown that in February 1901, appellant, appellees Ambrose
G. Lupton and Gemmill, and Eliza Lupton, executed the
partnership agreement set out in appellant's complaint, and
pursuant to the provisions thereof established a partnership
banking business at Pennville; that each of the partners con-
tributed $5,000 to the prosecution of the business, and the
same was continued under the management of appellees Am-
brose G. Lupton and Gemmill until June 30, 1905; that
appellant took no part in the management or conduct of
the business, and never inspected or examined the books of
the bank; that on certain dates there were various amounts
apportioned among the partners as net earnings of the busi-
ness; that on June 30, 1905, the value of each partner's
interest in the bank was $5,800, which interest consisted of
his original investment, and $800, as his share of the undi-
vided profits, after deducting certain taxes unpaid, some
interest on certificates of deposit, and some unearned dis-
count. On said day, appellee Ambrose G. Lupton tendered
appellant a written agreement, already signed and acknowl-
edged by himself and Gemmill, for the formation of a part-

nership, to exist for ten years, which was substantially the same as the former contract, except that it provided for a capital stock of $25,000, instead of $20,000. He requested appellant, who was his sister, to sign and acknowledge the contract, and told her that the purpose in increasing the capital was to meet the competition of a newly-established rival bank, in Pennville; that appellant refused to execute the contract, and refused longer to continue as a partner in the bank; that thereupon $5,800 was deposited to appellant's credit in the bank, by said Lupton and Gemmill, and a certificate of deposit for said amount was issued and made payable to appellant; *"which certificate of deposit was handed to the plaintiff by the defendant Lupton, whereupon the plaintiff told the defendant Lupton, to keep said certificate, and that when she wanted said cerificate she would call for it.* That the defendant Lupton placed said certificate in said bank, for the use of the plaintiff, and ever since said time said certificate and the money represented by said certificate remained in said bank for plaintiff, and at all times subject to her order." The court further finds that on June 30, 1905, after the above occurrence, new articles of partnership were executed by said Eliza Lupton, appellees Lupton and Gemmill, and other persons, and that this new partnership, on July 1, 1905, "took over to itself" the property and assets of the old partnership, and assumed all the liabilities of the latter, and thereafter conducted said banking business until September 9, 1905, when Eliza Lupton died; since that time the business has been conducted by the surviving partners.

Prior to the commencement of the action appellant demanded of appellees the payment to her of her share of capital invested, and earnings realized thereon, and damages on account of the dissolution of the partnership. The complaint here was filed in May, 1906.

Appellant contends that the court erred in its conclusion of law. The answer to this question depends on the construc-

tion placed on that part of the court's finding which we have italicized. It was appellees' theory that appellant was not entitled to recover because, on June 30, 1905, she accepted the $5,800 certificate of deposit, as the equivalent of all her right, title and interest in the partnership property, on a dissolution created by her. Unless she did so accept the certificate, she was entitled to a judgment for $5,800, with interest from the time of making a lawful demand.

2. The legislative purpose in making provision for special findings of fact, with conclusions of law thereon, was manifestly to make the case easily reviewable by setting forth the exact grounds on which the judgment rests. 38 Cyc. 1953. A special finding, under our statute,

3. (§577 Burns 1914, §551 R. S. 1881) is a statement of the ultimate facts from which the law determines the rights of the parties to the action. *Perkins* v. *Hayward* (1890), 124 Ind. 445, 24 N. E. 1033; 8 Ency. Pl. and Pr. 933; *Norris* v. *Jackson* (1869), 9 Wall. (U. S.) 125, 19 L. Ed. 608. In passing on a finding of facts, to determine its sufficiency to support the conclusions of law, statements of evidence, or findings of mere evidentiary facts, must be disregarded as surplusage. *Bartholomew* v. *Pierson* (1887), 112 Ind. 430, 431, 14 N. E. 249. In *Taylor* v. *Canady* (1901), 155 Ind. 671, 675, 57 N. E. 524, 59 N. E. 20, it was said: "The office of a special finding is not to state the evidentiary facts, that is, such facts as *prove* the existence of the ultimate or inferential facts. Such evidentiary and probative facts are to be considered by the court in determining the existence of the substantive ultimate facts, but their statement in a special finding is improper." Of course the

4. "court" referred to in the foregoing paragraph is the trial court. This court has no original jurisdiction, except ancillary. The law vests in the jury, or trial court the exclusive power to determine facts, and this court has no power to infer the existence of an ultimate or inferential fact from evidentiary facts found, however log-

ical such inference might be; and this is true if all the evidence be embraced in the findings. *Whitcomb* v. *Smith* (1890), 123 Ind. 329, 332, 24 N. E. 109; *Behler* v. *Ackley* (1909), 173 Ind. 173, 89 N. E. 877. To this rule there is an exception in case the evidence is documentary. It is the function of the court to construe documents. *Bolton* v. *Clark* (1903), 162 Ind. 471, 477, 68 N. E. 283.

The italicised portion of the court's finding is a condensed recital of the testimony of appellee Lupton, concerning a conversation and transaction between him and appellant, at their mother's residence. This cannot be held as other than a finding of a mere evidentiary fact. It is not the equivalent of a finding that appellant accepted the certificate. It is not claimed by appellees that Lupton was intending, in this transaction, to make any tender to appellant of the amount due her. There was no plea of payment or tender. If under any conceivable theory of the pleadings evidence of tender would have been competent, it is manifest that the trial court entertained no such view, for there was no judgment for plaintiff for $5,800, a necessary result if the proffered certificate had been deemed a lawful tender of the amount due. The appellees and court relied on the theory that appellant accepted the certificate as the equivalent of her share in the partnership property, on dissolution. We are of the opinion that the court erred in concluding against appellant's right of recovery on the facts found, after disregarding the finding of evidentiary facts; but we also are of the opinion that the ends of justice would be better subserved by granting a new trial, rather than by ordering a restatement of the court's conclusions of law.

Appellant claims error in various matters in the overruling of her motion for a new trial. The evidence shows without conflict that when this action was commenced all the firm debts had been paid. Appellant correctly insists that she was entitled to a finding of such fact.

There was no finding on that matter. The evidence
shows that during the life of the partnership, a large
part of its funds—averaging about $17,000—was
kept on deposit in a Hartford City bank, in which appellees Lupton and Gemmill were interested. The Pennville
bank received interest on these deposits to the extent of
about two per cent. The funds of the Pennville Bank, were
generally loaned at six per cent. The court's finding that·
appellant's share in the assets of the bank, on June 30, 1905,
was $5,800, is based solely on the evidence in relation to
capital contributed, and undivided profits as shown by the
bank's books, which did not show receipts from the Hartford City bank in excess of two per cent. A managing partner must act in perfect faith in transacting the partnership
business, and is not permitted to retain any profits derived
from the use of its funds in his private business. *Love* v.
*Carpenter* (1868), 30 Ind. 284; 30 Cyc. 459.

It is claimed by appellant that the trial court, in the hearing of this cause, proceeded on the theory that the act of
March 4, 1905 (Acts 1905 p. 182) to "regulate the
business of banking by individuals, partnerships and
unincorporated persons", had the effect of dissolving
the partnership here in controversy, on June 30, 1905. If
such theory was adopted, it was erroneous. The act expressly contemplated the continuance of banking partnerships on condition that they should comply with the statutory regulations. The capital here was more than required
by the provisions of the act. The original partnership agreement had not been acknowledged by the parties interested
therein, but such acknowledgment might have been made on
or prior to July 1, 1905. The evidence shows that bank
furniture and fixtures constituted less than one-third in
amount and value of its capital stock. The act of 1905 required also a statement that the responsibility and net worth
of the individual members of the firm should equal an

amount double that of the capital. A compliance with the regulations of the act of 1905 authorized a continuance of the business under the original contract.

Appellant presents many other questions, but it is not probable that they will arise on another hearing, and we therefore deem it unnecessary to consider them. Judgment reversed with instructions to sustain appellant's motion for a new trial.

## DISSENTING OPINION.

MYERS, J.—I am not able to view this case in the same light as my brethren. By §3 of the act of 1905 (Acts 1905 p. 182), a partnership bank theretofore existing, was required after July 1, 1905, to do certain things, under heavy penalty for failure, and among others, each partner was required to execute and acknowledge a copy of the articles of copartnership. It is found by the court that appellant refused to sign and acknowledge such an instrument, which increased the capital stock to $25,000. This she had a right to decline to do, *but it is also found that she refused to continue longer as a partner in the bank.* This being true, she had no right to claim damages for the alleged dissolution of the partnership. It is also found that her interest was $5,800 at that time. Under such finding that was all she was entitled to. She could not be compelled to accept a certificate of deposit found to have been tendered to her, conceding that the finding does not show acceptance by her, but the circumstances and conditions should be viewed in a reasonable light, and I am unable to see what more could have been done than was done, considered as a tender.

Conceding also, that appellee was entitled to a finding that the partnership debts had been paid, we are bound to presume so far as the findings are concerned that there was no evidence of the fact. Conceding also, that a partner must act in the utmost good faith, the evidence does not show lack of good faith simply because it fails to show that upon a

sum carried in another bank, only two per cent profit was realized, when ordinarily the bank could loan its funds at six per cent. We cannot ignore the fact known to all, that good banking requires a reserve to be carried, in short, a call loan, when the reserve is carried in some other institution. If it was carried in the bank's vaults, it would earn nothing; if carried elsewhere as a call loan, we are in no position under the finding, to say that it should have earned more than two per cent, and it is found that this percentage went to make up the undivided profits, and the finding of the court as to the value of appellant's interest, includes that item.

It is found that appellant early in the day of June 30, 1905, after consultation with a lawyer, signed the new articles of copartnership which had been given her by appellees, and delivered them to them. Later in the day, she procured the instrument and refused to return it, "and thereafter plaintiff refused to continue longer as a partner in said bank". It is then found that there was deposited in the bank to plaintiff's credit the sum of $5,800, a certificate of deposit drawn in her name, "which certificate of deposit was handed to the plaintiff by the defendant Lupton, whereupon plaintiff told said defendant Lupton to keep said certificate, and that if she wanted it, she would call for it." The certificate was placed in the bank for her use, and the money represented by it has at all times since been subject to her order. I think a fair construction of the words "handed to", taken with the other facts found, and the fact that they were brother and sister, is synonymous with delivery. But in any event, whether it was a delivery or not, it was a tender, and that was sufficient, *coupled with her refusal further to continue in the partnership.*

As respects the failure of the finding to show that the debts of the former partnership were paid, it is to be observed that it is found that appellant refused to continue in the partnership, which amounted to dissolution, when as-

sented to by the other partners, and that the new partnership took over the property and assets of the old partnership, and assumed all liabilities, etc., taken with the finding of a tender of the amount due appellant, it was immaterial that the finding was not made that the indebtedness had been paid, because she was not entitled to be paid while there were debts due, and it amounts to the same thing as a finding that the indebtedness had been paid, and could make no difference in this case.

There was evidence of a tender of the certificate and as to the only item of profit sought to be presented, as not having been allowed, twenty-seven different instances by way of example are shown, of periods in which the deposits in the Hartford City bank averaged $112,000; the cash in the Pennville bank averaged $40,000; and the average deposit in the Hartford City bank was $16,500, and that it was a call loan, and the evidence shows that on call loans the rate of interest was two per cent, and on time loans three per cent. It is not shown that any loan was ever denied at the Pennville bank on account of lack of funds, and no complaint is made of the interest received on call loans on daily balances except in the Hartford City bank, and yet during the whole time, large sums, sometimes equal to or greater, are shown to have been carried as call loans in other banks, the interest on which was two per cent on the daily balances, thus showing a uniform procedure, together with evidence that that was the rate on call loans, and this to my mind rebuts any claim of improper use of funds in the Hartford City bank, in addition to the showing made by appellant that the same practice followed after the organization of the new co-partnership. We cannot overlook the fact either of the proximity of Hartford City to Pennville, and the population of each, or of the possibly greater security in the former, coupled with the readiness of access and communication as a possible factor in the matter.

It is pointed out that there was no plea of tender, and the

answer was in general denial only. It is decided, and I think correctly, that it is an action in equity for an accounting. The tender of the certificate of deposit was either accepted or refused, and where, as is found, the certificate for the amount tendered has at all times been subject to the order and control of appellant, and no more than the amount tendered is found due, appellant in equity and good conscience ought not to recover a greater sum and interest, or her costs, for the reason that in equity, appellant had under her dominion the full amount to which she was entitled, when the suit was brought. It was in effect her money the same as if the money had been brought into the court, and that would be a bar. *Woodcock* v. *Clark* (1846), 18 Vt. 333; *McDaniels* v. *Reid* (1845), 17 Vt. 674; *Powers* v. *Powers* (1839), 11 Vt. 262; *Warren* v. *Nichols* (1843), 47 Mass. 261; *Hill* v. *Carter* (1894), 101 Mich. 158, 59 N. W. 413; *Cone* v. *Wood* (1899), 108 Iowa 260, 79 N. W. 86, 75 Am. St. 223; *Pennypacker* v. *Umberger* (1854), 22 Pa. St. 492.

The only effect of a tender at common law is to relieve the defendant of costs from the date of the tender, which at law it is well settled can only be the filing of a plea of tender, and the bringing of the money into court. The general denial under our code is much broader than the general issue at common law. In other words a tender at law is not a defense to the action proper, but goes only to defeat further costs, but the rule in equity is different in case of an action for an accounting, where the tender is collateral to the action, as having operated to extinguish a right of action, or defeat an action which in good conscience ought not to be brought. The rule certainly ought not to be any more strict against a defendant, than it is against a plaintiff in case of actions for an accounting, and it has been held that relief may be granted a defendant without a cross-complaint, upon the general ground of doing equity between the parties, in one action. *Craig* v. *Chandler* (1883), 6 Colo. 543, and cases cited. And it is the generally acknowledged rule, that

the strict rule of tender at law does not obtain in actions in
equity. *Doyle* v. *Ringo* (1913), 180 Ind. 348, 102 N. E. 18;
*Cone* v. *Wood, supra; Nicodemus* v. *Young* (1894), 90 Iowa
423, 57 N. W. 906; 4 Pomeroy, Eq. Jurisp. (3d ed.) §1047
and note. The evidence of tender was introduced without
objection, but I think would have been proper over objec-
tion, under the answer of general denial, for the reason that
there was no admission of a cause of action, which it was
sought to avoid, which is the effect of a tender at law, and
in view of the court's finding that appellant refused to con-
tinue as a partner, if the amount due was tendered, it should
in equity defeat a judgment, even for costs. *Eaton, etc.,
R. Co.* v. *Hunt* (1863), 20 Ind. 457, 468; *Lomer* v. *Waters*
(1898), 2 Q. B. 326; *Nichols* v. *Evens* (1883), 22 Eng. Ch.
D. 611; 2 Daniell, Chancery (6th ed.) 1396-1399. In
*Jeffersonville Water Supply Co.* v. *Riter* (1897), 146 Ind.
521, 45 N. E. 697, it is said: "A defendant, under
the general denial, is not confined to negative proof in
denial of the facts stated in the complaint, as a cause of
action, but may, upon the trial, introduce proof of facts
independent of those alleged in the complaint, but which
are inconsistent therewith, and tend to meet or break down
or defeat the plaintiff's cause of action." See, also, *Cheney*
v. *Unroe* (1906), 166 Ind. 550, 556, 77 N. E. 1041, 117 Am.
St. 391; *Gwinnup* v. *Shies* (1903), 161 Ind. 500, 69 N. E.
158; *Nixon* v. *Beard* (1887), 111 Ind. 137, 141, 12 N. E.
131; *Blizzard* v. *Applegate* (1878), 61 Ind. 368; *Drover* v.
*Evans* (1877), 59 Ind. 454; *Allis* v. *Nanson* (1872), 41 Ind.
154, 157; *Smith* v. *Lisher* (1864), 23 Ind. 500; *Crum* v.
*Yundt* (1895), 12 Ind. App. 308, 40 N. E. 79.

It does not require such a tender as amounts to pay-
ment, novation, release, accord and satisfaction, or comes
within the category of payment into court, but amounts to
equitable performance, mitigation of damages, and dis-
charge. The object of a tender is to put the opposite party

in a situation to avail himself of the offered indebtedness or property, at any time he may see fit and to discontinue his action, and if that has been done before suit brought, the reason for it fails. Here it is shown that a certificate of deposit for the amount due, which is in effect a promissory note, and is an obligation of which no one but appellant could make avail, and which is subject to her sole control, has at all times been at her command and disposal, and which was not objected to for any reason, or at least not on account of being in that form, and she should have accepted the tender when made, and it seems to me inequitable that appellees should be subjected to any further obligation than interest.

I do not overlook the provisions of §598 Burns 1914, Acts 1899 p. 101, but that section only goes to the force and effect of tenders and keeping them good, where they can only be kept good, that is, available to the opposite party at any time, by the money or thing or property being brought into court, but as pointed out that is not this case. Even in a strictly legal action an equitable defense may be interpleaded. Subd. 3, §352 Burns 1914, §347 R. S. 1881. The reason is certainly as strong in an equitable action, and as we have seen, under the general denial, a defendant may introduce proof of facts independent of those alleged in a complaint, which are inconsistent therewith and tend to meet, break down, or defeat the cause of action stated.

I find no evidence from which the court could have found any value of the good will of the business. There was evidence as to every finding made, and the question was one of the credibility of witnesses.

I concur in the opinion that the conclusions of law are erroneous, but in my opinion, in view of the failure of appellees to bring in the certificate of deposit or pay the money into court, of which they have had the use, there should be a direction to the court below to restate its conclusions of law in favor of appellant for the amount found due at the

Vol. 182—24

time of settlement, with legal interest from that date, and judgment accordingly.

NOTE.—Reported in 105 N. E. 237; 106 N. E. 708. As to what constitutes partnership, see 115 Am. St. 400. As to actions between partners, see 12 Am. Dec. 649. See, also, under (1) 24 Cyc. 114; 16 Cyc. 413; (3, 4, 5) 38 Cyc. 1980; (6) 38 Cyc. 1964; (7) 30 Cyc. 438; (8) 5 Cyc. 1915 Ann. 487-New.