IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1916, AND MAY
TERM, 1917, IN THE ONE HUNDRED AND FIRST
YEAR OF THE STATE.

---

BISSELL CHILLED PLOW WORKS *v.* SOUTH BEND
MANUFACTURING COMPANY ET AL.

[No. 8,868. Filed March 16, 1916. Rehearing denied, December
22, 1916. Transfer denied March 8, 1917.]

1. PLEADING.—*Demurrer.—Memorandum.—Statute.*—Section 344
Burns 1914, Acts 1911 p. 415, requiring that, when a demurrer
to any complaint is filed on the ground of insufficiency of facts,
a memorandum shall be filed therewith stating wherein the
pleading is insufficient, and providing that the statute shall not
affect litigation pending at the time the act became effective,
which was in 1911, does not prevent a consideration of ques-
tions presented by a demurrer to a complaint in an action
instituted in 1910 because no memorandum was filed. p. 7.

2. NAVIGABLE WATERS.—*Obstruction.—Injunction.—Complaint.—
Sufficiency.—Allegation of Damage.*—In an action for a man-
datory injunction to compel the removal of certain obstructions
from a navigable river, where the complaint alleged that plain-
tiff had constructed a dam across the stream to develop water
power, installed water wheels and did other things necessary to
utilize water power, that its stockholders were entitled to use
the water from the water head erected by the dam, that the
obstructions placed by defendant in the stream below the dam
impeded the flow of water and threw it back upon the dam and
water wheels, thus diminishing the water power which would
otherwise be available, and that the damage caused by the ob-
structions complained of would be continuous and permanent
and could not be compensated by a money judgment, such com-

Bissell Chilled Plow Works *v.* South Bend Mfg. Co.—64 Ind. App. 1.

plaint sufficiently alleges damages to plaintiff as against demurrer.   p. 8.

3.   APPEAL.—*Presentation of Questions in Lower Court.—Exceptions to Conclusions of Law.—Time for Taking.—Statute.*— Under §656 Burns 1914, §626 R. S. 1881, providing that the party objecting to the decision must except at the time it is made, exceptions to conclusions of law not taken until four days after they were announced and filed were not duly taken.   p. 8.

4.   NAVIGABLE WATERS.—*Obstruction.—Mandatory Injunction.— Right to Decree.*—Under §263 Burns 1914, §262 R. S. 1881, providing that all persons having an interest in the subject of an action, and in obtaining the relief demanded, shall be joined as plaintiffs, except as otherwise provided; and under the principles of equity, where a corporation constructed a dam in a river to develop water power, and the stockholders, as an incident to the ownership of the stock, were entitled to the use of the water power, such corporation and its stockholders were entitled to a joint judgment for a mandatory injunction to compel the removal of obstructions below the dam which interfered with the free flow of the water and thereby lessened the power available, as each of the plaintiffs was injuriously affected by the same cause and were jointly interested in its removal, and it was not essential to the joint right of action that the injury to each be identical or of the same degree.   p. 19.

5.   NAVIGABLE WATERS.—*Navigability.—Use.*—A river which is in fact a navigable stream, although used more generally for purposes other than navigation, is, nevertheless, a public highway.   p. 21.

6.   NAVIGABLE WATERS.—*Obstruction.—Public Nuisance.*—The obstruction of the flow of waters of a navigable stream is a public nuisance.   p. 21.

7.   NAVIGABLE WATERS. — *Rights of Riparian Owner. — Water Power.*—Although the right of navigation is paramount when a river is navigable, a riparian owner may make such reasonable use of the stream for water power and other purposes as will not materially interfere with navigation.   p. 22.

8.   NUISANCE.—*Public Nuisance.—Abatement.—Action by Private Party.*—A private party may maintain a suit to abate, or to enjoin the continuance of a public nuisance, but he must show that he has suffered an injury different in kind from that suffered by the public in general.   p. 22.

9.   NAVIGABLE WATERS.—*Obstruction.—Public Nuisance.—Abatement.—Action by Riparian Owner.*—The use by riparian owners of the waters of a navigable stream for power purposes is, within certain limitations, a lawful and permissible private

NOVEMBER TERM, 1916.          3

Bissell Chilled Plow Works *v.* South Bend Mfg. Co.—64 Ind. App. 1.

right, separate and distinct from the general or public right of navigation, and where obstructions in the stream impeding the flow of water, thereby diminishing the power available, cause a special and substantial injury to such right, riparian owners are entitled to sue to abate the public nuisance and to enjoin its continuance. p. 23.

10. NAVIGABLE WATERS.—*Obstruction.—Abatement. — Laches. —* Where a riparian owner for many years deposited waste material in a navigable stream below a dam previously constructed by a water power company to develop power, until a part of the bed of the river was filled in, but the power company and one of its stockholders, entitled to the use of the water as an incident to the ownership of the stock, did not discover the full effect of the obstructions in diminishing the water power available until the completion of the stockholder's power plant in 1905, when notice was given that the making of such deposits must cease, the power company and its stockholders were not precluded by laches or acquiescence from compelling, in an action for a mandatory injunction instituted in 1910, the removal of both the refuse deposited in the stream and a building being erected by such riparian owner on the ground made by filling in the river bed. pp. 24, 27.

11. INJUNCTION.—*Mandatory.—Discretion of Court.—*While the principles and rules of equity, including those concerning laches, are to be invoked in an action for a mandatory injunction to compel the removal of obstructions from the bed of a navigable river, there is considerable latitude within which each case must be determined by its particular facts, and the granting or refusal of an injunction rests in the sound discretion of the court. p. 26.

12. NAVIGABLE WATERS.—*Obstruction. — Abatement. — Right. —* Where a dam was constructed across a navigable stream by a company to develop water power and its stockholders were entitled to the use of the water for power in proportion to their holdings of stock, such company can maintain an action to compel the removal of obstructions in the river behind the dam which retarded the flow of water and thereby lessened the power available to the stockholders, even though no money rentals for the water were received by the company and it did not use water power in the business in which it was engaged. p. 27.

13. NAVIGABLE WATERS.—*Obstructions.—Removal. — Damage. — Findings.—Inferences.—*In an action for a mandatory injunction to compel the removal of obstructions from a river, where the primary facts found warrant but the single inference of the ultimate fact that the obstructions ordered removed caused

a special and serious damage to the property of plaintiffs, such ultimate fact will be inferred and treated as found. p. 29.

14. NAVIGABLE WATERS.—*Obstruction.* — *Removal.* — *Mandatory Injunction.—Balancing Equities.*—A nuisance created by obstructing a navigable stream by depositing refuse and commencing the erection of a building thereon may be abated where it causes special damage to plaintiff's water-power rights by impeding the flow of water, thereby diminishing the power available, notwithstanding defendant's claim that a balancing of equities shows that the cost of removing the obstructions is far greater than the damage caused plaintiffs by leaving the obstructions in the stream. p. 29.

15. NUISANCE.—*Public Nuisance.—Laches.*—Where an individual suffers a special and peculiar injury from a public nuisance, laches or acquiescence does not deprive him of his remedy. pp. 34, 36.

16. NUISANCE.—*Private Nuisance.* — *Abatement.* — *Laches.* — A mandatory injunction may be issued to abate a private nuisance, where it appears that the complainant has not acquiesced therein and has acted promptly upon notice of the injury. p. 36.

17. NAVIGABLE WATERS. — *Obstruction.* — *Removal.* — *Action for Mandatory Injunction.—Laches.*—The fact that one specially injured by the obstruction of a navigable stream did not bring suit immediately to enjoin the obstruction is insufficient to defeat a mandatory injunction compelling its removal, as defendant was bound to know that it was unlawful to obstruct a public highway. p. 37.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the South Bend Manufacturing Company and another against the Bissell Chilled Plow Works. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Stuart MacKibbin* and *Anderson, Parker, Crabill & Crumpacker,* for appellant.

*Howell, Jones & Devine* and *Hubbard & Pettingill,* for appellees.

FELT, P. J.—This is an appeal from a judgment of the St. Joseph Circuit Court wherein a mandatory injunction was ordered issued against appellant in favor of ap-

pellees, commanding the removal of certain obstructions from the St. Joseph river in the city of South. Bend, Indiana.

The errors assigned and relied on by appellants are as follows: (1) The overruling of the demurrer to the first paragraph of amended complaint; (2) the same as to the second paragraph of the amended complaint; (3) error in each of the first and second conclusions of law, respectively; (4) error in overruling appellant's motion for a new trial.

The new trial was asked on the ground that the decision of the court is contrary to law; that it is not sustained by sufficient evidence; and that each of the special finding of facts is not sustained by sufficient evidence.

The paragraphs of complaint are identical, except the second paragraph of amended complaint contains the averment that the St. Joseph river is a navigable stream, which averment is not in the first paragraph.

It is in substance averred that the South Bend Manufacturing Company is a corporation organized under an act of the general assembly of Indiana passed in 1842; that the company was authorized to construct a dam across the St. Joseph river at or near the town of South Bend and to acquire certain property and do certain things to utilize the water power made available by such dam; that in pursuance of said act, in 1843, said company erected a dam across the river, purchased land along the river, built raceways, installed water wheels, and did the other things necessary to use the water power; that continuously since that date the company has owned a large interest in said dam and still owns the same and has continuously used and now uses the waters of said river to supply power for manufacturing purposes and the stockholders of said company and other parties under grants from said company also

use such power for like purposes; that the South Bend
Manufacturing Company provides power for pumping
water into the mains of the city of South Bend to sup-
ply it with water for fire protection and for other pur-
poses; that each stockholder in the company is entitled
to use 11 1/9 square inches of water from the head of
water created by said dam; that the rental value of the
water power created by said dam is more than $10,000
per year; that the efficiency of said dam in holding a
head of water and furnishing power is greatly impaired
when the water is obstructed in its flow below the dam,
because such obstructions throw the water back upon
the dam and water wheels which it uses to develop
power for manufacturing purposes; that a short dis-
tance below said power house the Bissell Chilled Plow
Works has for a long time deposited refuse, ashes, slag
and other materials along the west bank of the river and
out into the bed of the stream for a distance of 100
feet where there was formerly a depth of water at nor-
mal stages of the river of from three to six feet, which
obstruction also extended north and south for more
than 100 feet and covers an area in the original bed of
the stream, which is particularly described; that such
deposits are backing up a large volume of water upon
said dam and water wheels and thereby depriving the
Oliver Chilled Plow Works of the continuous use of fifty
horse power otherwise available and also depriving the
South Bend Manufacturing Company of more than 100
horse power, all of which power is needed by said com-
panies in their business; that the loss of said power in
the manner aforesaid has in the past caused, and will in
the future cause, said companies great and irreparable
injury and damage; that the Bissell Chilled Plow Works
is now constructing a permanent concrete wall over and
upon said deposits in the river, which wall is two feet
thick and twelve feet high and projects out into the bed

NOVEMBER TERM, 1916. 7

Bissell Chilled Plow Works *v.* South Bend Mfg. Co.—64 Ind. App. 1.

of the river beyond its west bank about fifty feet and extends north and south a distance of fifty feet; that said wall is more than 100 feet below the raceway at said power house, more than 600 feet below said dam and throws a large volume of water back upon said dam and water wheels and thereby diminishes the power that would otherwise be available by reason of said dam and water wheels; that the aforesaid obstruction causes continuous damage to appellees which cannot be compensated in a money judgment and is irreparable because appellant intends to continue to maintain said obstructions for all time and declines to remove the same; that appellees are deprived of water power and if appellant is not restrained and enjoined from continuing such obstructions and compelled to remove said wall and other obstructions the injury caused thereby will be continuous and permanent; that said obstructions have been created and erected without the knowledge, assent or concurrence of appellees. The prayer asks that appellant be enjoined from further work on said wall or from filling the bed of the river; that it be compelled to remove said wall and other obstructions aforesaid from the river and to restore the flow of the stream to its natural course and be perpetually enjoined from obstructing the bed of the river, and for all proper relief.

Appellee contends that no questions are presented by the demurrer to the complaint for want of a memorandum required by the sixth clause of the act of 1911, Acts 1911 p. 415, §344 Burns 1914.

The record shows that the suit was begun on July 14, 1910, and the act invoked was not in force until April 21, 1911. The fourth section provides that it shall not affect litigation pending at the time the act became effective. However, most of appellants' propositions and points are directed to the suffi-

ciency of the evidence, the finding of facts, the conclusions of law and the judgment. *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 626, 103 N. E. 652. The only point specifically urged against the sufficiency of the complaint is that it is not shown in the averments that the South Bend Manufacturing Company has been damaged in any way by the alleged wrongful acts of appellant. The averments are sufficient to withstand the demurrer in this respect. The questions urged by appellant against the pleadings are also presented in considering the conclusions of law stated on the finding of facts and by the motion for a new trial. *Sell* v. *Keiser* (1911), 49 Ind. App. 101, 102, 96 N. E. 812; *Town of Cicero* v. *Lake Erie, etc., R. Co.* (1912), 52 Ind. App. 298, 308, 97 N. E. 389.

While the question is not presented by the briefs, our examination of the record discloses the fact that the exceptions to the conclusions of law were not duly taken. The special finding of facts and conclusions of law thereon were announced and filed May 12, 1913, and no exceptions to the conclusions of law were taken at that time. Nothing further was done in the case until May 16, 1913, on which date we find the following entry: "Comes now again the parties herein by counsel and upon the special finding of facts and conclusions of law *heretofore filed herein,* the defendant The Bissel Chilled Plow Works excepts separately and severally to each of the two conclusions of law stated by the court upon the foregoing facts," etc. §656 Burns 1914, §626 R. S. 1881, provides: "The party objecting to the decision must except *at the time the decision is made.*" This provision of the statute has been frequently construed by this and the Supreme Court and as applied to exceptions to conclusions of law requires the party objecting or excepting thereto to take his exceptions at the time the special finding of facts and con-

clusions of law are filed. *Hull* v. *Louth* (1887), 109 Ind. 315, 333, 10 N. E. 270, 58 Am. Rep. 405; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 241, 64 N. E. 860, and cases cited; *Starr* v. *Swain* (1914), 182 Ind. 313, 106 N. E. 357, 358.

But in view of our ultimate conclusion in the case and the fact that practically the same questions are raised by the assignment that the court erred in overruling the motion for a new trial, we have concluded to use the finding of facts as the basis of our decision, rather than a statement of the evidence since the ultimate conclusion will be the same in either event.

The finding of facts is very lengthy, goes into many details and in the main follows the averments of the complaint. Some of the facts averred are not controverted. The substance of the finding material to a decision of the question presented is as follows: The St. Joseph river is a navigable stream but has not been navigated since 1852, except by small boats over certain limited portions of the stream; that there are several dams across the stream in the states of Michigan and Indiana which have been in existence more than twenty years, and those at South Bend, Mishawaka and Elkhart have been in existence for more than forty years; that prior to 1870 there was a lock at South Bend by which boats were passed around the dam but its use was discontinued about 1852, and it fell into decay and in 1870 was filled up, since which time no way has existed of passing boats over, across or around the South Bend dam. The South Bend Manufacturing Company in 1843 erected a dam across the St. Joseph river at South Bend, Indiana, and constructed a raceway along the west bank of the river. In 1855 this dam was washed away, but was immediately restored. After its restoration the spillway consisted of two sections, the total

length of which from 1855 to 1905 was 373 feet. Until 1859 all of the waters ponded by the South Bend dam were used by individuals and corporations who maintained manufacturing establishments between the west race and the river immediately below the dam. These establishments were equipped with water wheels, which took the water from head races on the west race, and after using the same returned it to the river through tail races below the dam. After 1859 the right to one-half of the waters ponded by said dam was conveyed to individuals on the east side of the river, who constructed a race known as the east race, which ran parallel with the river along the east bank. These individuals and later individuals and corporations have continuously owned half of the waters of the river, and operated manufacturing plants on the east side. In 1852 the South Bend Manufacturing Company platted the land which lay between the east bank of the west race and the west bank of the river below the dam into eighteen lots which were irregular in width up and down stream and abutted on the river below the dam. The company sold all of the lots except Nos. 1, 2 and 3, which were retained by it and which it still owns. Each stockholder in the South Bend Manufacturing Company was entitled to use 11 1/9 square inches of water, for each share of stock, measured at the wheel under a head which varies from nine to ten feet. In 1907 the South Bend Manufacturing Company raised the height of the dam two feet, thereby increasing the head so that it is from ten to twelve feet. The dam in question here is now 237 feet in width and the river opposite the power house of the Oliver Chilled Plow Works is 240 feet wide. The Oliver Chilled Plow Works is an Indiana Corporation organized in 1901, and engaged in the manufacture and sale of plows. In 1903 it purchased all the lots in the South Bend Manu-

NOVEMBER TERM, 1916.        11

Bissell Chilled Plow Works *v.* South Bend Mfg. Co.—64 Ind. App. 1.

facturing Company's Addition, except lots Nos. 1, 2, 3, and the lots now owned by appellant, and also acquired eighty-five per cent. of the stock of said manufacturing company, with the accompanying water rights. Part of the ground was purchased from appellant. It took down several buildings and erected a power house at the water's edge on the west bank of the river and parallel therewith, which is 272 feet long and twenty-eight feet wide. The remaining fifteen per cent. of the stock in said manufacturing company has been owned by the city of South Bend since 1872, and the water rights of the city have furnished power for a pumping station on the west race which supplies water to the city for general service and fire protection. The city operates two water wheels and its tail race enters the river between the dam and the south end of the Oliver power house. In 1903 the Oliver Chilled Plow Works filled up the north half of the west race and widened the south half and conducted all of the water except that used by the city to its power house, which it began operating in July, 1905. The power is used to operate the Oliver Chilled Plow Works and the Oliver Hotel in South Bend. The South Bend Pulp Company owned and occupied lots Nos. 12 to 15, inclusive, in said addition from 1881 to 1896, when the name of the company was changed to Bissell Chilled Plow Works by decree of court and the Bissell Chilled Plow Works is still the owner and occupant of said lots. These lots abut on the river and lie between the north line of the Oliver power house and the south line of Colfax avenue, and have an irregular frontage on the river of about eighty feet. The appellant owned and occupied said premises from 1881 to 1907 and used the same in its manufacturing business. The buildings on the bank of the river formerly extended over the water, on piling, a distance of thirty-two feet. Until 1903 the Bissell Chilled Plow Works

used water power, but in that year it sold its water rights to the Oliver Chilled Plow Works and ceased to use water power. In 1883 a brick wall stood on the west bank of the river on appellant's property at the water's edge, which was the east wall of the brick building formerly occupied by the South Bend Iron Works, and in 1912, was about sixty-five feet from the edge of the water. In 1883 it stood at the edge of the water and there was a good current of water running along the wall at normal stages of the river. In 1883 appellant began depositing furnace and cupola refuse, slag, cinders and other debris on the west bank of the river next to said wall, and continued to do so until 1905, when the deposits so made extended out into the river and were gradually pushed out into it beyond this wall and toward the center of the river and into the channel for a distance of about 100 feet beyond the wall and up and down stream for a distance of 136 feet. The deposit extends from the present north line of the Oliver Power House to the center line of Colfax avenue and includes a superficial area of about 12,843 square feet. It has filled up the channel of the river along the west bank where a former depth of water, over a part of the area in question, of from five to six feet, existed and has changed the current of the river and deflected it toward the second pier of the Colfax avenue bridge. Since the Oliver power house has been in operation this deposit had backed the water of the river up against the wheels of the power house and has caused backwater which substantially reduces the head of water in the power house and continually interferes with the operation of its wheels. At the south end of this deposit the Bissell Chilled Plow Works, in the fall of 1904, constructed a concrete retaining wall, at a cost of $275, extending from the northeast corner of the Oliver power house, and at right angles to the east line of the power

house, into the river a distance of 13½ feet, and continued the same at an angle northeasterly a further distance of 15½ feet. This wall averages nine feet in height and is thirty-three inches in thickness at the top. The water discharged from the lower group of wheels of the power house strikes this wall and is deflected into the stream. Water discharged from the upper group of wheels is crowded within ten feet of the east bank of the river. The full effect of this deposit in backing water upon plaintiff's wheels was not felt until July, 1905. In 1905 the appellees notified appellant to stop depositing refuse in the river at the point in question. In the summer of 1910 and before this action was commenced appellant began the construction of a building upon this deposit and laid a foundation for the east wall of such building near the water's edge and upon and in this deposit. This foundation consisted of a cement wall extending and fronting along the south line of Colfax avenue from the northeast corner of the Market house to a point eighteen feet west of the edge of the river; thence in a southeasterly direction 59½ feet to the water's edge. At the time this action was commenced this building had been under construction about five weeks. Prior to appellant's occupancy of said premises the South Bend Iron Works had dumped some refuse material west of the river line of the Oliver power house, but such refuse did not extend into the river beyond the east line of said power house projected down stream and does not interfere with the free discharge of water from said power house or the free flow of water from said dam. The deposit of refuse by appellant materially obstructs the free flow of water from said dam. Between the south end of the Oliver power house and the dam, a storage reservoir for water is maintained by the city of South Bend, which projects into the river beyond the east line of the power

house a distance of twenty-five feet, and is protected by a concrete retaining wall, which in no way interferes with the free discharge of water from the power house or the free flow from the dam. Appellant claims absolute title to the land made by the deposit of refuse material as aforesaid including the lands enclosed by the walls of the unfinished building aforesaid, as follows: Beginning at the northeast corner of the Oliver power house, situated on the west bank of the St. Joseph river at South Bend, Indiana; thence northwest to the northeast corner of the market house on the south side of Colfax avenue, which corner is forty-nine feet from the water's edge at the west bank of the river; thence northwest on said line extended to the center line of Colfax avenue; thence east 140 feet; thence southwest to a point where a line drawn parallel with the east line of the power house and thirty-six feet distant therefrom intersects the north line of the power house produced northeasterly; thence southwest to the place of beginning.

The court also finds that if appellant is restrained and enjoined from further work in the construction of foundations or walls within the above described area and shall remove the foundation walls of the proposed building already constructed by it within said area and all other refuse materials deposited by it within such area, which lies on and above the natural soil of the bed of the St. Joseph river, and is not more than six feet below the surface of the river, at normal stages, and shall remove the retaining wall constructed by it, and if it be perpetually enjoined from obstructing the bed of said stream by depositing debris of any kind therein, then and in such event the appellees will have substantial relief and said river will have been restored to its natural flow over the above described area, and there will be a substantial and permanent decrease in

NOVEMBER TERM, 1916.          15

Bissell Chilled Plow Works *v.* South Bend Mfg. Co.—64 Ind. App. 1.

the backwater upon the wheels of the Oliver power house and upon the South Bend dam.

Washington street in South Bend, Indiana, is a street running east and west, the south line of which extended, crosses the St. Joseph river, immediately below the South Bend dam. The next street north of Washington street and down stream is Colfax avenue, which also runs east and west across said river, and since the year 1904 the river has been spanned by a bridge on Colfax avenue constructed of concrete and steel, two piers of which—called "piers land 2"—stand in the channel of the stream and in line with it and the third pier stands at the present water's edge upon the west bank of the stream. The west race aforesaid prior to 1903 flowed parallel with and on the west side of the river between Washington street and Colfax avenue, and entered the river again at a point approximately fifty feet below, or north of, the north line of Colfax avenue. When the town (now city) of South Bend was laid out and platted in the year 1830, the west shore line of the river as it then existed was marked and shown on a plat marked exhibit A, made a part of this finding. The east or river wall of the power house built by the Oliver Chilled Plow Works is located approximately at the water's edge on the west shore or bank of the St. Joseph river as the same existed in 1895 and 1896. But this line is east of the original west bank of the water's edge of said river. The south end of the east or river side of said power house is seventy-eight feet east of the original west shore line of the river, as the same existed at the time the plat of the original town of South Bend was made. The north end of said power house or the east or river wall is eighty-two feet east of the west bank, or shore line, of the river as the same existed when said plat of the South Bend Manufacturing Company was made and 109 feet east of the west bank, or

shore line, as the same existed when the plat of the original town of South Bend was made. The power house was located entirely on land filled in and reclaimed from the river by the grantors, near or remote, of the Oliver Chilled Plow works and on land which was originally in and a part of the bed of the river. The water comes from the west race and passes through the wheels of the power house into said river, meets the currents of the river at right angles thereto, and said river in front of the power house is approximately 240 feet in width. Dirt and material placed in the river in building a coffer-dam used in the construction of said power house were allowed to remain in the bed of the river, and some piling east of the power house remained in the river and projected above the surface when the river was low. In 1904 while the aforesaid power house was being constructed, the county of St. Joseph constructed a steel and concrete bridge over the river on Colfax avenue, and in so doing built coffer-dams, and constructed two cement piers in the bed of the river and left dirt, piling and other material in the bed of the stream which obstructed its current. In 1904 or 1905 while the work hereinbefore described was being done, that part of the east bank of the west race which supported such race and kept the water therein, and which part of the bank was located upon lots Nos. 1 and 2, *supra*, washed out and the entire water of the west race passed through such opening for a considerable period, and washed out the entire material of which the bank of the race was composed down to the water's edge and carried the dirt of which the bank was composed into the St. Joseph river and distributed the same along the bed thereof north of the dam and in front of a part of the property occupied by the Oliver Chilled Plow Works. There is now, and at all times since the construction of said coffer-dam and

said washout has been, a small ridge of earth in the bed of the river in front of said power house, but it does not materially interfere with the flow of water from the power house wheels.

The court also found that James Oliver in his lifetime was the chief stockholder and owner of the South Bend Iron Works, a corporation, and was president of its board of directors and its business manager; that said company in 1881 sold to the South Bend Pulp Company the real estate now owned by appellant; that afterwards the name of South Bend Pulp Company was by due legal proceedings changed to Bissell Chilled Plow Works; that said James Oliver was also the chief stockholder in and president of the Oliver Plow Works from its organization in 1901 and continuously until his death in 1906.

That in 1871 and 1872 the said South Bend Iron Works constructed a brick building on the edge of the water, in the river, which was used for manufacturing purposes; that it dumped refuse material into the edge of the river but the same did not extend out as far as a line extended parallel with the east line of said power house and did not divert the main current of the river; that said iron works also constructed at different times two brick walls—one known as the arch wall on ground originally in the bed of the St. Joseph river; that the wall constructed after the erection of the arch wall was about forty-seven feet north of what is now the north end of the Oliver power house and ten feet west of the east line of said power house if projected north, and extended northwest a distance of sixty feet; that said wall remains except a small portion of the north end which was torn down in 1910, when the "market house" was built by appellant.

The wall was about eighty feet east of the west bank

of the river as it appeared when the plat of the South Bend Manufacturing Company was made in 1845 and about 115 feet east of the river as it appeared in 1830 when the original plat of the town of South Bend was made; that subsequent to 1887 appellant erected a building about sixteen by twenty-four feet in size, east of said wall in which it placed its tumbling mills, and also erected other buildings near thereto which it used for manufacturing purposes; that in 1903 and 1904 appellant also erected some small buildings east of its tumbling mill which were permanent structures and cost $1,000, and have been used continuously by it since that time in connection with its manufacturing business; that the construction of all of said buildings and walls aforesaid was known to appellees and to James Oliver when they were built and they made no objection thereto; that in erecting its power house the Oliver Chilled Plow Works constructed a retaining wall which extends out into the river and it has since removed the top thereof so as to slope the wall from the building down into the river; that in constructing its coffer-dam when it built its power house the Oliver Chilled Plow Works drove some of its piling on appellant's property extending into the river and left them there when the dam was removed; that the wall built by appellant in 1910, on its ground made as aforesaid, was constructed for the foundation of a building to be erected thereon extending to Colfax avenue with its east wall resting upon such foundation along the edge of the river. That the wall was built with the knowledge of appellees and before this suit was commenced

The conclusions of law stated upon the finding of facts are in substance as follows: (1) Appellees are entitled to have the backing of water by appellant upon the South Bend dam, and upon the wheels of the Oliver power house, abated and restrained, and to have the

structures and deposits described in the findings removed, in order to give appellees proper relief. Appellees are each entitled to injunctive relief to accomplish this result, and the court hereby orders the removal of said structures and deposits. (2) That appellees are entitled to recover the costs of suit from appellant.

The court rendered judgment upon the conclusions of law and provided that within 180 days, "unless the court for good cause shown shall by its order extend the period for a reasonable time, the defendant The Bissel Chilled Plow Works, shall remove all walls and structures within an area" which is particularly described as in the finding of facts, excepting therefrom three piles described in the twenty-fourth finding, all of which work was to be done at the cost of appellant.

Appellant contends that the joint judgment rendered in favor of both appellees is erroneous because neither the pleadings, the evidence nor the finding of facts shows any joint right in appellees.

The averments of the complaint are sufficient to warrant the finding of facts made by the court. The findings show that the South Bend Manufacturing

4. Company owns the dam and three lots abutting on the river below the dam; that in 1907 it raised the dam two feet and thereby increased the head from nine or ten feet to eleven or twelve feet. The finding of facts also shows that the Oliver Chilled Plow Works owns real estate abutting on the river below the dam and has constructed and operates a power house on its property at the edge of the water by means of which it generated power from the water made available by the dam; that it has acquired and owns eighty-five per cent. of the stock of the South Bend Manufacturing Company; that each stockholder is entitled to 11 1/9 inches under a head varying from nine to ten feet of water; that the obstructions in the river opposite appel-

lant's property backs the water up on the wheels in the power house, and lessens the power produced and at the same time backs the water up and prevents its free flow from the dam and thereby lessens the power made available by the dam.

Section 263 Burns 1914, §262 R. S. 1881, provides that "All persons having an interest in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs, except as otherwise provided in this act."

This is a proceeding in equity and in our view appellees were properly joined as plaintiffs without the aid of the statute. But under the statute those having an interest in the subject of the action and in obtaining the relief demanded must sue jointly, except in certain instances not involved here. Each of the appellees is injuriously affected by the same cause and they are jointly interested in removing such cause and preventing its recurrence. It is not essential to such joint right that the injury to each shall be identical or of the same degree. They have a common interest in the relief sought and the judgment rendered grants such relief to both of the complaining parties. 1 Works' Practice, ch. 5, p. 51; *Tate* v. *Ohio, etc., R. Co.* (1858), 10 Ind. 174, 71 Am. Dec. 309; *Town of Sullivan* v. *Phillips* (1887), 110 Ind. 320, 11 N. E. 300; *Carmien* v. *Cornell* (1897), 148 Ind. 83, 89, 47 N. E. 216; *McIntosh* v. *Zaring* (1897), 150 Ind. 301, 307, 49 N. E. 164. We therefore hold that the judgment is not erroneous because it was rendered jointly in favor of both appellees.

The evidence and the finding of facts show that the St. Joseph river is a navigable stream but is not extensively used for navigation and under conditions that have prevailed for many years and still exist cannot be successfully navigated through any considerable portion of its length by large boats or vessels because of dams

and other obstructions and the absence of locks or other means of passing over or around such obstructions.

Appellees' claim is based on the proposition that appellant has created and proposes to permanently maintain obstructions in the river which wrongfully deprive them of the free use and full enjoyment of their property; that such obstruction is a public nuisance which causes special and different damage to appellees' property from the injury suffered by the general public on account of such nuisance. Appellant contends that the St. Joseph river is not navigable in a sense that enables appellees to base any right thereon and also asserts that in any event the navigability of the stream is immaterial in this case, because the injury of which appellees complain is an injury to water power and not an interference with navigation.

However, the evidence shows and the finding states that the St. Joseph river is a navigable stream, and while the finding also shows that it is not extensively used for navigation and is more generally used for other purposes, yet the limited use made of the river for navigation and its use for other purposes does not change the ultimate fact that it is a navigable stream and as such a public highway. *Board, etc.* v. *Pidge* (1854), 5 Ind. 13; *State* v. *Wabash Paper Co.* (1898), 21 Ind. App. 167, 174, 48 N. E. 653, 51 N. E. 949; *Depew* v. *Board, etc.* (1854), 5 Ind. 8; *Viebahn* v. *Board, etc.* (1905), 96 Minn. 276, 104 N. W. 1089, 1093; *Petit* v. *Incorporated Town, etc.* (1903), 119 Iowa 352, 93 N. W. 381, 383. The obstruction of the St. Joseph river as shown by the evidence and the finding of facts creates a public nuisance. *O'Brien* v. *Central Iron, etc., Co.* (1901), 158 Ind. 218, 221, 63 N. E. 302, 57 L. R. A. 508, 92 Am. St. 305; *Pettis* v. *Johnson* (1877), 56 Ind. 139, 148; *City of Valparaiso* v. *Bozarth* (1899), 153 Ind. 536, 538,

55 N. E. 439, 47 L. R. A. 487; *State* v. *Berdetta* (1880), 73 Ind. 185, 189, 38 Am. Rep. 117; 1 Wood, Nuisance, ch. 2, p. 36; *Reyburn* v. *Sawyer* (1904), 135 N. C. 328, 47 S. E. 761, 65 L. R. A. 930, 935, 102 Am. St. 555; *St. Louis* v. *Knapp Co.* (1881), 13 Fed. 144.

Appellant contends that, if the finding of facts shows a technical interference with the right of navigation, appellees have not shown that they have the right to compel the removal from the river of the obstruction complained of.

The right of a riparian owner to use water power may coexist with the public right of navigation. When a river is navigable the right of navigation is paramount but the riparian owner may nevertheless make such other reasonable uses of the stream as do not materially interfere with navigation. 1 Farnham, Waters & Water Rights §29, p. 136; *Forsyth* v. *American Maize, etc., Co.* (1915), 59 Ind. App. 634, 108 N. E. 622, 624; Gould, Waters (3d ed.) §§167, 168.

A private party may maintain a suit to abate, or to enjoin the continuance of, a public nuisance, but to sustain such action he must show that he has suffered an injury different in kind from that suffered by the public in general. *Strunk* v. *Pritchett* (1901), 27 Ind. App. 582, 586, 61 N. E. 973; *Dantzer* v. *Indianapolis, etc., R. Co.* (1894), 141 Ind. 604, 610, 39 N. E. 223, 34 L. R. A. 769, 50 Am. St. 343; *Pittsburgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101, 104, 47 N. E. 332; *Southern R. Co.* v. *Town of French Lick* (1912), 52 Ind. App. 447, 456, 100 N. E. 762; *Dwenger* v. *Chicago, etc., R. Co.* (1884), 98 Ind. 153, 156; *Martin* v. *Marks* (1899), 154 Ind. 549, 555, 57 N. E. 249; *Woodruff* v. *North Bloomfield, etc., Co.* (1884), 18 Fed. 753, 789. The injury of which appellees complain is the interference with, and the les-

sening of, the water power made available by the dam and power house described in the pleadings and the finding of facts. The development and use of this power within certain limitations was a lawful and permissible private right acquired and enjoyed by appellees, which was separate and distinct from the general or public right of navigation, and a special and substantial injury to such right of appellees would afford them the right to abate the public nuisance and enjoin its continuance. *Viebahn* v. *Board, etc., supra,* and cases cited. *Reyburn* v. *Sawyer, supra; Harniss* v. *Bulpitt* (1905), 1 Cal. App. 140, 81 Pac. 1022; *Indiana, etc., R. Co.* v. *Eberle* (1887), 110 Ind. 542, 546, 11 N. E. 467, 59 Am. Rep. 225; *Adams* v. *Ohio Falls Car Co.* (1892), 131 Ind. 375, 380, 31 N. E. 57; *Kissel* v. *Lewis* (1900), 156 Ind. 233, 241, 59 N. E. 478; *O'Brien* v. *Central Iron, etc., Co., supra; West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21, 24, 72 N. E. 879; *City of Valparaiso* v. *Moffitt* (1895), 12 Ind. App. 250, 255, 39 N. E. 909, 54 Am. St. 522; *Fossion* v. *Landry* (1890), 123 Ind. 136, 141, 24 N. E. 96; *Board, etc.* v. *City of Detroit* (1898), 117 Mich. 458, 76 N. W. 70; 2 Cooley, Torts (3d ed.) 1298; 4 Pomeroy, Eq. Jurisp. §1351. The injury to water power suffered by appellees is different in kind and character from the injury to the navigation of the St. Joseph river caused by the obstructions complained of in this suit. It follows therefore that appellees have shown such different and special injury as to enable them to compel the removal of the aforesaid obstructions, if some other reason does not exist for denying such relief.

Appellant also asserts that appellees have been guilty of such laches and acquiescence in what was done in filling up the river as to make it inequitable to compel it to remove the obstructions as directed by the court's decree.

The evidence and the facts found by the trial court show that the power house of appellee, Oliver Chilled Plow Works, stands on ground made by filling in the bed of the river and that appellant has maintained structures on ground made in the same way. The area from which appellant is ordered to remove obstructions is north and downstream from the power house, and if the east or water line of the power house is extended north along the river to Colfax avenue the area from which such obstructions are to be removed lies east of such line and farther out into the bed of the stream than the ground upon which the power house stands. It also appears that both appellant and Oliver Chilled Plow Works and their predecessors in right and title participated in and had knowledge of the filling in of the river bed along its west bank north of the dam to Colfax avenue; that appellant used water power until 1903 when it ceased to use such power; that about 1903 appellee Oliver Chilled Plow Works acquired additional property and water rights and at great cost erected the power house described in the pleadings and findings and equipped it with water wheels and so connected it with the water from the dam as to generate power which it uses in its manufacturing business and for other purposes; that a part of the ground on which the power house was so erected was acquired from appellant; that this power house was put into operation in 1905 and the full extent of the injury to such water power by the aforesaid obstructions in the river was not ascertained or known until after the power house was put into operation; that about 1907 the South Bend Manufacturing Company raised the dam two feet and thereby increased the head of water approximately two feet.

The findings also show that the dam in question is

now 237 feet wide and the river opposite the power house is 240 feet wide.

The other facts connected with the history and use of the dam, the water power, the encroachment upon the stream by the riparian owners, the extent of navigation in the St. Joseph river and the structures erected along the west bank immediately south of the dam all appear in the digest of the finding of facts above set out and need not be repeated here. They show that the situation is complicated and presents many real difficulties if one attempts to reconcile all the facts and bring them into absolute harmony with any conclusion that may be reached. Viewed broadly it appears that the interested parties gradually encroached upon the river from the west under circumstances that make it reasonable to assume that each was cognizant of what the other was doing and tacitly acquiesced therein until 1905, when the Oliver Chilled Plow Works notified appellant to cease making deposits in the stream. At that time appellant was not using water power and appellee had discovered that the obstructions in the stream below or north of the power house held the water back and lessened the power produced by the water wheels and also backed the water up on the dam so as to lessen the power available thereby, for the reason that to the extent the water was prevented from flowing freely from the dam the head was decreased with a corresponding effect upon the fall of the water and the power available therefrom.

The facts, that appellant ceased to use water power in 1903, and sold to appellee Oliver Chilled Plow Works ground on which it erected part of its power house; that appellant must have known of the large expenditures of money by appellees in raising the dam, changing the race, building and equipping the power house and the purpose of such expenditures from 1903 to 1907,

are sufficient to justify the court in concluding that appellant is not in a position to assert any right as against appellee based on laches or acquiescence in what was done prior to 1905. In that year appellant was notified to cease filling in or further obstructing the stream, and it cannot from the date of such notice rely upon appellees' acquiescence in the further obstruction of the river below its power house.

Likewise on the facts of this case neither party is in a position to controvert the right of the other to the property acquired and held by it on the west bank of the river, down to a line where each may be held responsible for the situation created by such encroachments on the bed of the river. In view of the fact that appellant sold to appellee a part of the ground on which its power house was erected, such line, on equitable principles, may be designated as the east line of the Oliver power house extended north along the west bank of the river to Colfax avenue as shown by the trial court's finding of facts. This conclusion is likewise warranted by other facts proven by the evidence and found by the court which show that the encroachments on the bed of the river down to such line have not materially interfered with or damaged any water power or other riparian right or interfered with the public right of navigation.

While principles and rules of equity are to be invoked in cases like the one at bar, yet of necessity there must be and is considerable latitude within which each

11. particular case must be determined by, and rest upon, its own particular facts. In other words, the granting or refusal of an injunction rests, in each particular case, in the sound discretion of the court. The ultimate question here is between two riparian owners and the determination of their rights and duties as between themselves is not an adjudication of any

right the public may have to abate any nuisance that may have been created and maintained by either or both of such riparian owners. *McQuiddy* v. *Ware* (1873), 20 Wall. 14, 22 L. Ed. 311, 312; *City of Logansport* v. *Uhl* (1885), 99 Ind. 531, 539, 50 Am. Rep. 109; *Indiana, etc., R. Co.* v. *Eberle, supra; Ryason* v. *Dunten* (1904), 164 Ind. 85, 96, 73 N. E. 74; 2 Wood, Nuisance (3d ed.) §§801, 802. In *Ryason* v. *Dunten, supra,* our Supreme Court said: "There is no fixed or determinate rule for the application of the doctrine of laches. Each case must depend upon its own peculiar circumstances. In other words, the question is addressed to the sound discretion of the chancellor." We therefore conclude that the court did not err in refusing to deny the relief prayed on the ground of laches or acquiescence in what had been done. *Otis* v. *Gregory* (1887), 111 Ind. 504, 509, 13 N. E. 39; *Sheffield Car Co.* v. *Constantine Hydraulic Co.* (1912), 171 Mich. 423, 137 N. W. 305, 315, Ann. Cas. 1914 B 984; *Meigs* v. *Pinkham* (1910), 159 Cal. 104, 112 Pac. 883, 886; *Mountain Copper Co.* v. *United States* (1906), 142 Fed. 625, 638, 73 C. C. A. 621.

It is also contended that the judgment cannot stand because there is no finding that appellees sustained any damage. This proposition is not seriously urged as to the Oliver Chilled Plow Works but it is earnestly insisted and urged that neither the evidence nor finding of facts shows any loss of rentals or damage to the property of the South Bend Manufacturing Company.

There is no showing that any money rentals were received by the company or that it used water power in any business or enterprise in which it was engaged. If such findings are essential the judgment is erroneous. However, the evidence and the findings do show that the South Bend Manufacturing Company erected and

maintains the dam; that in 1907 it raised it two feet and thereby increased the head of water two feet in depth; that the stock in the corporation is held by its coappellee and the city of South Bend, both of which use power made available by the dam; that it owns three lots abutting on the river below the dam; that the obstruction complained of backs the water up and "materially obstructs the free flow of water from the dam" and "has backed up the water of the river against the wheels of the power house and caused backwater which substantially reduces the head of water in the power house and continually interferes with the operation of its wheels." The findings also show the amount of water each share of stock is entitled to receive based upon the head of water provided by the dam before it was raised two feet in 1907. The fact that most of the stock of the company is held by Oliver Chilled Plow Works and the rest by the city of South Bend does not show that the property of the South Bend Manufacturing Company is not damaged by the obstruction of the river. The findings do not show that the present stockholders are entitled to all the power the dam may afford since it was raised two feet. But if appellant's contention be conceded that such is the case, it does not necessarily follow that the owner of the dam suffers no substantial damages to its property because of the obstruction in the river. As already stated, the findings clearly show that the backing up of the water retards the free flow of the water from the dam, decreases the head of water and thereby lessens the power available but for such backing up of the water. This shows a substantial damage primarily to the property of the South Bend Manufacturing Company and secondarily to the users of the power furnished by its dam.

It is no concern of appellant that the South Bend Manufacturing Company does not itself directly use

the power made available by its dam. If in fact its property is damaged substantially as alleged, appellant cannot escape liability on the ground that such appellee has some arrangement satisfactory to itself by which the Oliver Chilled Plow Works and the city of South Bend are entitled to use the power furnished by the dam. The objection that the damages are not so specifically shown as to entitle appellee to injunctive relief is not tenable. In *American Plate Glass Co.* v. *Nicoson* (1904), 34 Ind. App. 643, 653, 73 N. E. 625, it is held that a showing of substantial and serious damage is sufficient and the court here finds that the damage is material and substantial.

Furthermore, the facts found are such as to warrant but a single inference—that the obstruction causes a special and serious damage to the property of both appellees by backing the water up and lessening the power otherwise available. "Where the primary facts found lead but to one conclusion, or where the facts found are of such a character that they necessitate the inference of an ultimate fact, such ultimate fact will be inferred and treated as found." *Judah* v. *F. H. Cheyne Electric Co.* (1913), 53 Ind. App. 476, 484, 101 N. E. 1039, and cases cited; *Behler* v. *Ackley* (1909), 173 Ind. 173, 179, 89 N. E. 877; *Shedd* v. *American Maize, etc., Co.* (1915), 60 Ind. App. 146, 108 N. E. 610, 616; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 665, 80 N. E. 629, 14 L. R. A. (N. S.) 483; *Horn* v. *Lupton* (1914), 182 Ind. 355, 361, 105 N. E. 237, 106 N. E. 708. The trial court having treated the ultimate fact as found and there being no ground for any other conclusion the finding is sufficient here.

Finally, it is argued that the judgment cannot stand because it is not equitable, and a balancing of equities shows that the cost of removing the obstruction is far greater than the damage that has resulted.

or may result to appellees by leaving the obstructions in the stream. Also that appellee Oliver Chilled Plow Works, having built its power house on ground which is a part of the bed of the stream can have no standing in court to compel the removal of the obstructions east of the east line of such power house extended north to Colfax avenue.

The findings show that the obstructions placed in the bed of the river west of a line corresponding with the east line of the Oliver power house extended, do not interfere with the navigation of the stream or hinder the free flow of water from the dam; that appellant is claiming title to the area from which the decree orders the obstructions removed; that such obstructions do extend out into the current of the stream and deflect its course and also damage the water power as above shown. The basis of the action is the nuisance created by obstructing a navigable stream or public highway and causing special damage to the water power of appellees.

The encroachment on such stream must of necessity stop at some place and the trial court has fixed a line beyond which such encroachments shall not extend at the point where the obstructions interfere with and deflect the main current of the stream, and back the water up and prevent its free flow from the dam and power house. As already shown, appellant and appellee Oliver Chilled Plow Works and their predecessors have alike acquired ground west of this line by filling in the bed of the stream and still hold and use the same. Its occupancy and use does not create a nuisance while the obstruction east of such line does create a nuisance.

In *Sheffield Car Co.* v. *Constantine Hydraulic Co., supra,* the Supreme Court of the state of Michigan considered a case wherein the owner of a dam across the St. Joseph river at Three Rivers brought suit to enjoin

the owner of a dam across the river at Constantine from backing water upon its dam and lessening its water-power. The facts show that the owner of the lower dam raised it about thirty inches and enlarged its plant for developing power, and in so doing, expended about $218,000; that it began its improvements in 1902 and completed them in 1905, when it began ponding waters made available by the increased height of the dam. The facts show that the owners of the upper dam knew that the lower dam was being raised and that a large amount of money was being expended in so doing and in making other improvements to utilize the power to be developed thereby. Some time after 1905 the suit was begun and the case was tried in 1908. The court found that it was practicable and feasible to so control and pond the water as to keep it from rising above the level maintained before the dam was raised; that above such level the water backed up and interfered with the water power developed from the upper dam. The decree ordered the owner of the lower dam to place a plain and distinct mark at a designated place to show the elevation of the crest of its original dam and perpetually enjoined the owner of the lower dam from ponding the waters at a higher elevation than that available by its original dam as indicated by such mark.

It was contended that the owners of the upper dam had been guilty of such laches or acquiescence as to estop them from obtaining the relief demanded. Also, that the loss to the owners of the lower dam was so great in comparison with the injury to the upper dam as to make the decree inequitable. The court, among other things, said: "There is no claim that complainant gave any express consent or acquiescence, or that it stood by and allowed the raising of the dam to proceed upon any claim of the defendant that it expected to back the water above Drumheller's bridge. What the effect

of raising the dam was to be was a controverted question between the parties. It does not appear by any testimony in the case that the defendant in any way, or to any degree, relied upon any acquiescence of the complainant. * * * We think 'that the general rules governing the doctrine of estoppel are applicable here. One of those rules is that, where the facts are known to both parties, or where both parties have the same means of ascertaining the truth, there is no estoppel. * * * We are therefore of opinion that defendant is not in position to raise the question of estoppel; it not appearing that it was in any way influenced by any conduct or declaration of the complainant. * * * 'In cases of silence there must be not only the right, but the duty, to speak before a failure to do so can estop the owner.' * * * An equitable estoppel *in pais* requires, as to the person against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure." The court then took up the question of the alleged inequity of the decree and said it could not say from the record that the doctrine was applicable to the case, though it took cognizance of the general rule. The opinion shows that both parties to the suit had large business interests that were dependent upon the water power and that they expended large sums of money in maintaining their dams and the concerns connected therewith. The court concluded by holding that the complainant had made out a case entitling it to the relief prayed, and that notwithstanding the large expenditure of money in raising the dam and making other improvements in connection therewith, the defendant was perpetually enjoined from ponding the increased amount of water made available by raising the dam. As supporting the doctrine announced in the foregoing case, we cite: *Rhodes* v. *Whitehead* (1863), 27 Tex.

304, 316, 84 Am. Dec. 631; *Fletcher* v. *Holmes* (1865), 25 Ind. 458; *Foster* v. *Albert* (1873), 42 Ind. 40; *Franklin Nat. Bank* v. *Whitehead* (1897), 149 Ind. 560, 577, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. 302; *Frank* v. *City of Decatur* (1910), 174 Ind. 388, 394, 92 N. E. 173.

In *Sullivan* v. *Jones, etc., Steel Co.* (1904), 208 Pa. 540, 57 Atl. 1065, 66 L. R. A. 712, the Supreme Court of Pennsylvania considered a case involving an injury to residence property from smoke and dust produced by a change in the manner of operating certain furnaces for the manufacture of pig iron, which involved the expenditure of large sums of money, and was of great importance to the business of the company operating the furnaces. The decision turned upon the proposition that more injury would result to the company by granting the injunction than would result to the property owners by denying it. The court, among other things, at page 554 (L. R. A. p. 718), said: "It is urged that as an injunction is a matter of grace, and not of right, and more injury will result in awarding than refusing it, it ought not to go out in this case. A chancellor does act as of grace, but that grace sometimes becomes a matter of right to the suitor in his court, and, when it is clear that the law cannot give protection and relief—to which the complainant in equity is admittedly entitled—the chancellor can no more withhold his grace than the law can deny protection and relief, if able to give them. This is too often overlooked when it is said that in equity a decree is of grace, and not of right, as a judgment at law. In *Walters* v. *McElroy et al., supra* (151 Pa. 549, 25 Atl. 125), the defendants gave as one of the reasons why the plaintiff's bill should be dismissed, that his land was worth but little, while they were engaged in a great

mining industry which would be paralyzed if they should be enjoined from a continuance of the acts complained of; and the principle was invoked, that, as a decree in equity is of grace, a chancellor will never enjoin an act where, by so doing, greater injury will result than from a refusal to enjoin. To this we said: 'The phrase "of grace" predicated of a decree in equity had its origin in an age when kings dispensed their royal favors by the hands of their chancellors, but, although it continues to be repeated occasionally, it has no rightful place in the jurisprudence of a free commonwealth, and ought to be relegated to the age in which it was appropriate. It has been somewhere said that equity has its laws as law has its equity. This is but another form of saying that equitable remedies are administered in accordance with rules as certain as human wisdom can devise, leaving their application only in doubtful cases to the discretion, not the unmerited favor or grace of the chancellor. * * * There can be no balancing of conveniences when such balancing involves the preservation of an established right."

The court then referred to certain instances where the principle of balancing equities had been invoked and the rule stated, and said: " 'None of them, nor all of them, can be authority for the proposition that equity, a case for its cognizance being otherwise made out, will refuse to protect a man in the possession and enjoyment of his property because that right is less valuable to him than the power to destroy it may be to his neighbor or to the public'."

Cooley on Torts (Vol 2 [3d ed.] 1290) says: "It is a familiar principle that no lapse of time can confer the right to maintain a nuisance as against the State. * * * There still remains the case of a public nuisance, not complained of by the State but by those to whom it works a special and peculiar injury."

The author then shows that there has been some discrepancy of opinion as to the effect of lapse of time on the right of an individual to maintain a suit, where he suffers a special injury different in kind from that suffered by the general public, and concludes by saying: "On the whole the better doctrine seems to be, that the acquisition of rights by prescription can have nothing to do with the case of public nuisances, either when the State or when individuals complain of them." This language is quoted with approval by our Supreme Court in *Kissel* v. *Lewis, supra,* in which case it is also said: "The fact that the nuisance was already existing when the appellee bought his lot and built his residence did not deprive the appellee of the right to sue for any special injury, peculiar to himself, afterwards sustained by him or his property. The nuisance complained of was a public nuisance which occasioned special private injury, and no prescriptive right to violate the law could be urged against the private action for such injury."

In *Woodruff* v. *North Bloomfield, etc., Co., supra,* 788, it is said: "In the case of a public nuisance, it never becomes in itself lawful. It is not unlawful as to the whole public, and lawful as to its constituents, or a part of its constituents. It is absolutely and wholly unlawful. The act being unlawful, a private party sustaining special damages from the nuisance—from the unlawful act—gains a status which enables him to maintain a private action for such injury. * * * 'The private party sues rather as a public prosecutor than on his own account; and unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard. He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others who are or may be injured'." See, also, *Knox* v. *Chaloner* (1856), 42 Me. 150; *Kellogg* v.

*Thompson* (1876), 66 N. Y. 88; *New Salem* v. *Eagle Mill Co.* (1884), 138 Mass. 8.

A mandatory injunction may be issued when necessary under the equities of the case to give the complaining party the relief to which he is entitled. It 16. may be issued where the injury is clearly established, is continuing and irreparable. If the complaining party shows that he is suffering from the invasion of his rights by a private nuisance or the like it must also appear that he has not acquiesced therein and that he acted promptly upon notice of the injury which necessitates such remedy. In case of a public nuisance, laches or acquiescence does not deprive 15. the complainant of his remedy if his case is otherwise clearly established. *Schroyer* v. *Campbell* (1902), 31 Ind. App. 83, 87, 67 N. E. 193; *Dodge* v. *Johnson* (1903), 32 Ind. App. 471, 476, 67 N. E. 560; 4 Pomeroy, Eq. Jurisp. (3d ed.) §1359; 2 Wood, Nuisance (3d ed.) §§794, 804, 806; 22 Cyc 742-746; *State, ex rel.* v. *Vandalia R. Co.* (1914), 183 Ind. 49, 108 N. E. 97, 98; *City of Logansport* v. *Uhl, supra; Goodson* v. *Richardson* (1874), 30 L. T. Rep. (N. S.) 142; *Smith* v. *Smith* (1875), 20 Eq. 500; *Bailey* v. *Schnitzius* (1888), 45 N. J. Eq. 178, 181, 13 Atl. 247, 16 Atl. 680; *In Re Lennon* (1896), 166 U. S. 548, 553, 17 Sup. Ct. 658, 41 L. Ed. 1110, 1113; *Terre Haute Paper Co.* v. *Terre Haute Water Works* (1916), 62 Ind. App. 263, 110 N. E. 85, 87. In *Brauns* v. *Glesige* (1892), 130 Ind. 167, 169, 29 N. E. 1061, 1062, our Supreme Court say: "Where there is an unlawful invasion of a party's right, irreparable and continuing in its nature, the court may issue a mandatory injunction, and this it may do in an extreme case in the first instance, as well as upon final hearing."

The trial court has exercised judicial discretion in this case in granting the relief prayed and in fixing the

limits of the obstruction to be removed. If it has not abused such discretion the judgment should be affirmed. The obstruction ordered removed is a public nuisance. On the facts of this case the State could have abated the nuisance. The law gives the same right to an individual provided it also appears that he has suffered, or will suffer, an irreparable injury, different in kind from that suffered by the general public on account of such nuisance. Had the State instituted an action to abate the nuisance, the trial court would have had the power to compel appellant to remove the obstruction which created and maintains such nuisance. Clearly on the facts of this case the trial court would not have assumed that it was compelled to order the removal of all the obstructions placed in the bed of the St. Joseph river, or refuse to order the removal of any part thereof. The only reasonable conclusion is that the court in such event would have required the removal of so much of the obstruction as was necessary to abate the nuisance, and this is the exact basis of the decree in the case at bar.

While there are some facts which indicate that appellees did not act as promptly as they should have done, yet there is nothing to show that appellant was 17. induced to expend money or construct the walls mentioned in the findings, by anything said or done by appellees. The walls were built after appellee Oliver Chilled Plow Works notified appellant in 1905 not to further obstruct the stream. Furthermore, appellant was bound to know that it was unlawful to obstruct a public highway and that it could not justify itself in so doing by showing that appellees did not immediately bring suit to enjoin it from so doing. The injury to appellees and to navigation is continuing and irreparable so long as the obstructions remain in the river.

The trial court did not abuse the judicial discretion wisely vested in such tribunals; but on the other hand it seems to have wisely exercised such discretion and to have based its decision on equitable principles with due regard for private and public rights. The case seems to have been fairly tried on its merits and a correct result reached. No error prejudicial to any substantial right of appellant has been pointed out. Judgment affirmed.

Ibach, C. J., Caldwell, Moran, Hottel and Shea JJ., concur.

Note.—Reported in 111 N. E. 932. Navigable waters: (a) action for obstruction, 25 Am. Rep. 533, 29 Cyc 324; (b) private right of action for obstruction, 3 L. R. A. (N. S.) 1126, 38 L. R. A. (N. S.) 763; (c) right of private citizen to maintain action to abate nuisance caused by obstruction, Ann. Cas. 1913 E 51, 29 Cyc 324, 1208; (d) test of navigability, Ann. Cas. 1914 B 1067. Nuisance: acquiescence in or consent to erection of structure as precluding objection thereto, Ann. Cas. 1916 C 1235; effect of laches on remedy, 22 Cyc 777, 29 Cyc 1237.